**OFFICE OF PUBLIC UTILITY COUNSEL, Appellant,**

v.

**PUBLIC UTILITY COMMISSION OF TEXAS; Reliant Resources, Inc.; and Staren Power, L.L.C., d/b/a Texas Star Energy Co., Appellees.**

No. 03–02–00566–CV.

Court of Appeals of Texas, Austin.

April 10, 2003.

James K. Rourke Jr., Austin, for Appellant.

Elizabeth R.B. Sterling, Asst. Atty. Gen., Natural Resources Division, Austin, for Public Utility Commission of Texas.

Hugh Rice Kelly, Jonathan L. Heller, Reliant Resources, Inc., Houston, for Reliant.

Robert J. Hearon Jr., Ron H. Moss, Graves Dougherty, Hearon & Moody, P.C., Austin, for Reliant & Staren Power L.L.C.

Before Justices KIDD, YEAKEL and PATTERSON.

## *OPINION*

MACK KIDD, Justice.

In this direct appeal, the Office of Public Utility Counsel ("Public Counsel") challenges two amended rules promulgated by the Public Utility Commission ("the Commission") as being outside the scope of the Commission's authority under chapter 39 of the utility code. *See* Tex. Util.Code Ann. §§ 39.001–.909, 39.001(f) (West Supp. 2003). The challenged rules deal with: (1) the authority of competitive retail electricity providers to request disconnection of customer electricity service and (2) the rate to be charged by Providers of Last Resort, the default electricity providers under deregulation. *See* 27 Tex. Reg. 8428, 8463–65, 8474 (2002) (to be codified at 16 Tex. Admin. Code §§ 25.43, 25.483).

Because we believe the amended rules are within the Commission's statutory authority, we will affirm them as amended.

## BACKGROUND

The general outline of Texas's deregulation scheme has been addressed in detail. *E.g., Reliant Energy, Inc. v. Public Util. Comm'n,* 62 S.W.3d 833, 835–36 (Tex.App.-Austin 2001, no pet.). Under the regulated system, a single utility generated electricity, built and maintained the electricity distribution grid, and sold the electricity to consumers. As we explained in *Reliant Energy,* under deregulation those three functions are to be unbundled into three separate entities: power generation companies, transmission and distribution utilities, and retail electricity providers ("REPs"). *See* Tex. Util.Code Ann. § 39.081. Under this system, the REPs sell the power generated by the power generation companies through the distribution system maintained by the transmission and distribution utilities. When deregulation is fully implemented, the REPs will charge consumers market-based rates rather than Commission-set rates. Chapter 39 provides for a transitional phase during which the Commission will continue to exercise a significant amount of control over the rate structure and enumerates specific rights, held by consumers, that will be the basis for continued Commission oversight of the REPs. Because this controversy revolves around the scope of those protections and their effect on the deregulated system, we will give a brief background discussion on the scope of chapter 39's consumer-protection provisions.

### The Regulated System

Under a fully regulated system, an electricity utility enters into a "regulatory compact" with the public: in return for a

monopoly over electricity service in a given area; the utility agrees to provide service to all requesting customers and to charge only the retail rates set by the Commission. *See* Fred Bosselman et al., Energy, Economics and the Environment, 150–58 (Foundation Press 2000). It is presumed the Commission will set rates at a "just and reasonable" level. *See* Tex. Util.Code Ann. § 36.003(a) (West 1998). Although the utilities participate in the rate-setting process, *id.* §§ 36.101–.111, and have the right to recover for some expenditures through the rate charged to the public, *see id.* §§ 36.201–.208, the Commission has discretion to set the rates charged to consumers. *Id.* § 36.003.

In addition to charging customers at a commission-set rate, regulated utilities are required to guarantee service to all customers in their area of responsibility. *See id.* § 37.051(a). Because consumers have a right to service in regulated areas, their service may be disconnected only in limited circumstances. Monopoly electricity utilities may not discontinue, reduce, or impair service to any part of their territories except for: (1) nonpayment of charges; (2) nonuse; or (3) another similar reason that occurs in the usual course of business. *Id.* § 37.152(a).[1] Any such disconnection or reduction in service is required to comply with the consumer-protection rules established by the Commission. *Id.* § 37.152(b). The Commission, by rule, has consistently provided procedural safeguards preventing the utilities from disconnecting service without good cause. *See Hidden Oaks v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir.1998) (section 37.512 creates a right to receive

electricity service unless the utility can "show cause" for disconnection).

The consumer's right to service is not absolute. By statute, service may be disconnected after notice if a customer fails to pay or make deferred-payment arrangements for past service by the date of disconnection, fails to comply with a deferred-payment agreement, or violates other aspects of the service agreement. Tex. Util. Code Ann. § 25.29(b) (West 1998). Customers shall not be disconnected due to a utility abandoning its allotted area. *Id.* § 25.29(f). Additional statutory provisions prevent disconnection of the ill and disabled, *id.* § 25.29(g), energy-assistance clients, *id.* § 25.29(h), and disconnection during extreme weather, *id.* § 25.29(i). These specific provisions ensure that consumers will be protected from service disconnection only in particular factual circumstances. The applicable Commission rule provides that these consumer-protections constitute the minimum requirement and that each electric utility is encouraged to develop policies that treat its customers with dignity and respect. 16 Tex. Admin. Code § 25.29(a) (2002).

**The Deregulated System**

As of January 1, 2000, each privately owned monopoly electric utility had to divest itself of its retail electricity sales activities and assign them to a REP. *See* Tex. Util.Code Ann. § 39.051(b). When the transmission, generation, and retail activities of a former monopoly utility continue to be held by a common holding company, the resulting REP is known as an "affiliated REP." *See Id.* § 39.081(c). By contrast, REPs that are not part of a

---

1. The statutory language establishing electricity deregulation exempts from mandatory deregulation those utilities that are owned by municipalities and cooperative associations. *See* Tex. Util.Code Ann. § 39.002 (West Supp. 2003). Accordingly, the old statutory provisions, which have not been repealed, still apply to consumers living in those areas. Our discussion deals only with the consumer-protection mechanisms created for those consumers who find themselves in areas in which deregulation has been implemented.

former utility held in a common holding company are generally known as "competitive REPs." Because the rates charged by REPs will be determined by market forces, the Commission has less oversight over the utility's activities. Under the new system, consumers are exposed, among other things, to potential: (1) market-price manipulation by incumbent utilities and affiliated REPs; (2) decisions by REPs not to serve given areas or customer classes; and (3) poor treatment of consumers on billing and service matters, the traditional area of concern under the regulated system. *See* Jim Rossi, *The Common Law 'Duty to Serve' and Protection of Consumers in an Age of Competitive Retail Public Utility Restructuring*, 51 Vand. L.Rev. 1233, 1288–94 (1998) (laying out the policy implications involved in providing guaranteed service under retail electricity deregulation).

In response to these concerns, Texas has maintained some control over electricity prices during the transition to a deregulated pricing system. On January 1, 2002, deregulated pricing took effect. Tex. Util. Code Ann. §·39.202(a). Between 2002 and 2007, affiliated REPs and competitive REPs are required to charge different amounts to their residential and small commercial customers. *Id.* Affiliated REPs are required to charge the "Price to Beat." *Id.* Subject to various calculations for fuel-cost adjustments, the Price to Beat is set at six percent less than the utility's corresponding average residential and small commercial rates in effect on January 1, 1999. *Id.* § 39.202(a). By contrast, chapter 39 does not provide a pricing mechanism for competitive REPs. Consequently, this pricing mechanism both caps the price the affiliated REP can charge residential and small commercial consumers and prevents the affiliated REP from cutting its rates dramatically in order to prevent competitive REPs from entering a service area. *See Reliant Energy*, 62 S.W.3d at 837 (discussing the concept of "headroom," the margin by which competitive REPs will be able to cut their prices in order to compete with the affiliate REPs). Affiliated REPs are held to the Price to Beat for their residential and small commercial consumers until the transition period is over or until at least forty percent of the market in a region is served by competitive REPs. Tex. Util. Code Ann. § 39.202(e).

Texas has adopted a system for protecting consumers in situations where REPs are unwilling to provide service to a particular area or class of customer. To ensure access to electricity service, chapter 39 requires that a Provider of Last Resort ("POLR") be designated for each distribution area. Any customer is entitled to be served by the POLR under a standard service package determined by the Commission. *See id.* § 39.101(b)(4). The POLR is to be a REP, chosen by a competitive mechanism or designated by the Commission. *Id.* § 39.106. The POLR thus ensures that all consumers will be offered electricity service.

Apart from the issues of price controls and guaranteed service, the deregulated system still involves the same potential for abuse by the utility that existed under the regulated system. Because the Commission has less direct control over REPs than it had over monopoly utilities, the legislature provided specific consumer-protections to govern these interactions. In line with the earlier protections set out by Commission rule, chapter 39 enumerates various consumer rights which can be enforced against all REPs. *Id.* §§ 39.101(a)-(d),(e). These include, among other things, protection from: disconnection in weather or medical emergencies, *id.* § 39.101(a)(1), discrimination, *id.* § 39.101(a)(5), involuntary changes in elec-

tricity provider, *id.* § 39.101(b)(2), and protection from misleading and deceptive practices, including sham billing, *id.* § 39.101(b)(6). At core, the Commission must ensure at least the same level of customer protection against potential abuses and the same quality of service that existed before implementation of deregulation. *Id.* § 39.101(f).

**The Controversy**

This dispute concerns the Commission's amendment of rules regarding: (1) disconnection of service for nonpayment and (2) the POLR service rate.

### The Disconnection Rule

The Commission's initial rule allowed only POLRs to request disconnection of customer service when customers failed to pay.[2] *See* 26 Tex. Reg. 125, 188 (2001) (amended by 27 Tex. Reg. 8428 (2002) (to be codified at 16 Tex. Admin Code § 25.483)). This rule reflected the Commission's concern that the deregulation process would disrupt electricity service-severe supply problems in Georgia had stemmed, at least in part, from granting the natural gas providers the right to terminate service. *See* 27 Tex. Reg. 8428, 8428–8430 (2002). The rule required a REP that no longer wished to serve a given customer to transfer that customer directly to the POLR for the area, without any interruption in service. *Id.* In effect, this meant that nonpaying customers would automatically be transferred to the POLR before their service could be disconnected entirely.

In adopting the amended rule, however, the Commission determined that the competitive REPs would, after 2004, be able to request disconnection of non-paying customers without transferring them to the

POLR. *See* 27 Tex. Reg. 8428, 8474 (2002) (to be codified at 16 Tex. Admin Code § 25.483) ("the Disconnection Rule"). Because it no longer believed that giving retail providers authority to request disconnection had not caused the natural gas crisis in Georgia, the Commission adopted a different approach to the role POLRs and affiliated REPs would play in deregulation. *See id.* at 8428–29. The Commission determined that, as opposed to customers who received no electricity service because of market forces, customers who were delinquent in paying their bills would not be entitled to be automatically transferred to POLR service. *Id.* After September 4, 2002, non-paying customers are to be transferred to the affiliated REP in much the same way as they would have been transferred to the POLR under the initial rules, being charged the applicable Price to Beat. Disconnection Rule § 25.483(b). Then, after October 2004, all REPs will be allowed to request disconnection of non-paying customers. *Id.* § 25.483(b)(2). REP disconnection will only be allowed if the Commission makes a finding in 2004 that the REP disconnection authority is not contrary to the public interest. *Id.* The consumer protections embodied in chapter 39 and those protections carried over from the regulated disconnection rules remain part of the disconnection process. *Id.* § 25.483(e)-(j).

### The POLR Rate Rule

A second rule initially selected POLRs and set the POLR rate by a competitive-bidding process, with the default rate set at the Price to Beat. *See* 25 Tex. Reg. 10899, 10916 (2000) (repealed by 27 Tex. Reg. 8428 (2002) (to be codified at 16 Tex. Admin Code 25.43)). If no electricity providers stepped forward to offer POLR ser-

---

**2.** Because POLRs and REPs do not actually control the distribution system, they must send a request to the transmission and distribution utility, which actually disconnects the consumer's electric service.

vice, the POLR would be determined by the Commission, and its rate would be set at the Price to Beat. *Id.*

Under the initial rule, however, the Commission had a difficult time finding electricity companies willing to serve as POLRs. The amended rule provides that the POLR rate will be set at a level at or above the Price to Beat, with a ceiling of twenty-five percent greater than the Price to Beat. 27 Tex. Reg. 8428, 8463–65 (2002) (to be codified at 16 Tex. Admin Code § 25.43) ("the POLR Rate Rule"). POLRs may now, in effect, charge between the Price to Beat and twenty-five percent above the Price to Beat. POLR Rate Rule, § 25.483(k)(2)-(3). The POLR Rate Rule treats affiliated REPs that serve as a POLR different from other REPs bidding to serve as a POLR. A POLR is to be selected in one of two ways: through a competitive-bidding process or, if there are no interested bidders, by lottery. *Id.* § 25.43(*l* ). REPs may bid to provide POLR service at a rate equal to or higher than the Price to Beat, not to exceed a rate twenty-five percent higher than the Price to Beat. *Id.* However, affiliated REPs may only serve as POLRs if they bid to provide POLR service at the lowest price, the Price to Beat. *Id.* § 25.43(h)(2). If no REPs, affiliated or competitive, participate in the bidding process, the POLR is to be selected by lottery and the rate charged to residential and small non-residential customers will be set at the highest allowable rate, twenty-five percent greater than the Price to Beat. *Id.* § 25.43(k)(4). Finally, the rate charged by the POLR may be adjusted by the Commission for good cause to ensure that it is sufficient to recover the POLR's cost of providing service. *Id.* § 25.43(k)(5).

### The Public Counsel's Challenge

Public Counsel, which took part in both the rulemaking and amendment proceedings, now brings this direct appeal to challenge the validity of the amended rules. *See* Tex. Util.Code Ann. § 39.001(f). Relying on chapter 39's provisions regarding POLR service and the Price to Beat, *see id.* §§ 39.101(b)(4),.106,.202, Public Counsel argues that chapter 39 creates an affirmative right in consumers to be offered: (1) POLR service "without interruption" and (2) electric service at or under the applicable Price to Beat. Public Counsel argues that, because the Commission's rules may only be adopted in order to further and enforce the consumer-protections created by chapter 39, *id.* § 39.101(e), any rule that is contrary to the specific rights to POLR disconnection and Price to Beat rates is outside the Commission's statutory authority. Public Counsel, as an additional matter, argues that the Disconnection Rule was not adopted in conformity with the APA's reasoned justification requirement because the Commission did not explicitly address Public Counsel's argument regarding the construction of sections 39.101(b)(4) and 39.106 of chapter 39.

The Commission, joined by Reliant Resources, Inc., and Staren Power, L.L.C.,[3] responds that chapter 39 does not create affirmative consumer rights to have their service transferred to the POLR in cases of non-payment and does not create the Price to Beat as a cap on the rates charged by POLRs. The Commission asserts that the amended rules violate no specific requirement of chapter 39, and therefore do not impermissibly interfere with its statutory intent. Likewise, regarding the reasoned justification chal-

---

**3.** Because their positions are substantially similar, we will refer to the appellees collectively as "the Commission," except where

necessary to refer to a specific appellee for the purpose of clarity.

lenge, the Commission argues that the Commission's response to Public Counsel's comment can be determined from reading the whole of the Commission's order adopting the amended rules. Because we disagree with Public Counsel's narrow reading of chapter 39, we will affirm the Commission's rules as amended.

## DISCUSSION

■■■ Because this case is a direct appeal to this Court under section 39.001(f) of the utility code, we are limited to reviewing the rules' validity. *See* Tex. Util. Code. Ann. 39.001(f) (West Supp.2003); *City Pub. Serv. Bd. of San Antonio v. Public Util. Comm'n,* 96 S.W.3d 355, 359 (Tex.App.-Austin 2002, no pet.). A validity challenge tests a rule on procedural and constitutional grounds. *Id.* An agency rule is presumed valid, and the challenging party bears the burden to demonstrate its invalidity. *McCarty v. Texas Parks & Wildlife Dep't,* 919 S.W.2d 853, 854 (Tex. App.-Austin 1996, no writ). The crux of Public Counsel's argument is that the amended Disconnection and POLR Rate Rules exceed the Commission's statutory authority. Absent specific or implied statutory authority, an agency rule will be void because made without legal authority. *Public Util. Comm'n v. City Pub. Serv. Bd. of San Antonio,* 53 S.W.3d 310, 315 (Tex.2001); *Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137 (Tex.App.-Austin 1986, writ ref'd n.r.e.).

■■■ The law prohibits agencies from exercising what is effectively a new power, or a power contradictory to the statute, based merely on a claim that the power is expedient for administrative purposes. *Public Util. Comm'n v. GTE–Southwest, Inc.,* 901 S.W.2d 401, 407 (Tex.1995). Although an agency's rules must comport with the agency's authorizing statute, the Legislature does not need to include every specific detail or anticipate all unforeseen circumstances. *Railroad Comm'n v. Lone Star Gas Co.,* 844 S.W.2d 679, 689 (Tex. 1992). To establish the rules' facial invalidity, Public Counsel must, then, show that each rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See City of Corpus Christi v. Public Util. Comm'n,* 51 S.W.3d 231, 236 (Tex.2001); *Public Util. Comm'n v. Gulf States Util. Co.,* 809 S.W.2d 201, 207 (Tex.1991); *Turner Bros. Trucking Co., Inc. v. Commissioner of Ins.,* 912 S.W.2d 386, 390 (Tex.App.-Austin 1995, no writ).

### *Statutory Authority for the Disconnection Rule*

Chapter 39 provides that all consumers have the right "to be served by a provider of last resort that offers a commission-approved standard service package." Tex. Util.Code Ann. § 39.101(b)(4). The Commission has statutory authority to adopt rules as necessary to enforce consumer rights, including the regulation of POLR service, and explicit authority to adopt rules regarding termination of electric service. *Id.* § 39.101(e).[4] Two subpara-

---

**4.** Section 39.101(e) reads:

The commission has the authority to adopt and enforce such rules as may be necessary or appropriate to carry out Subsections (a)-(d) including rules for minimum service standards for a retail electric provider relating to customer deposits and

the extension of credit, switching fees, levelized billing programs, interconnection and use of on-site generation, *termination of service* and quality of service . . .

Tex. Util.Code Ann. § 39.101(e) (emphasis added).

graphs lay out the POLR's obligation to consumers in its area of responsibility:

§ **39.106 Provider of Last Resort** ...

(c) A provider of last resort shall provide the standard retail service package to a requesting customer in the territory for which it is the provider of last resort ...

(g) In the event that a retail electric provider fails to serve any or all of its customers, the provider of last resort shall offer that customer the standard retail service package for that customer class *with no interruption of service to any customer.*

*Id.* §§ 39.106(c), (g) (emphasis added).

■ Public Counsel takes the position that section 39.106's requirement that POLR service be offered "without interruption in service to any customer" prevents the Commission from adopting a rule that allows for any potential gap in service between the time a REP decides to stop providing electricity to a customer and the time that customer begins to receive POLR electricity service. Public Counsel argues that the Disconnection Rule provides that, when a customer is disconnected following a request by the customer's REP, the customer will have to apply to the POLR for service. Therefore, according to Public Counsel, the Disconnection Rule adds a non-statutory regulatory requirement in addition to the "without interruption" standard and adopts a standard that conflicts with the overall purpose and objective of chapter 39.

The Commission denies that the "no interruption of service" requirement mandates that only POLRs be given authority to request disconnection of customer ser-

vice. The Commission argues that section 39.106(g) at most requires the POLR to *offer* service to disconnected customers without interruption in service, not to *guarantee* continuous electricity service during any conflict with the REP. The Commission takes the position that, because the POLR will be in the position of offering consumers the opportunity to have service without interruption, the Disconnection Rule does not run afoul of section 39.106. The Commission asserts that, in the end, the same core consumer-protections will apply to disconnection of service, regardless of whether the POLR or the REP disconnects the customer from service. *See* Tex. Util.Code Ann. § 39.101(a)(3) (requiring clear billing), (a)(8), (a)(9) (requiring information in English and Spanish regarding low-income assistance programs and deferred payment plans), (b)(5),(b)(6) (requiring adequate information be given consumers regarding consumer choice and protecting consumers from unfair billing practices); *see also* Disconnection Rule §§ 25.483(m), (n) (setting out requirements for disconnection notices in accordance with chapter 39's requirements).

We agree with the Commission's argument that the Disconnection Rule does not violate the requirements of section 39.106(g). Consumers will be offered service and, if they complete the application process provided for by the Commission, will receive that service with no interruption in service. This is a reasonable reading of the statute. The Commission's interpretation does not contradict section 39.106(g) or add an additional requirement to the statutory framework.[5]

---

5. We also note that section 39.101(h) provides that "A retail electric provider ... may not disconnect service to a residential customer during and extreme weather emergency or on a weekend day...." Tex. Util.Code Ann.

§ 39.101(h). In effect, this prevents the REP from disconnecting customer service only in particular circumstances. We do not believe it is inconsistent with chapter 39 for the Commission to allow REPs to request customer

Furthermore, in construing the Commission's authority, we must look to the statute as a whole, not section 39.101 in isolation. *See Reliant Energy,* 62 S.W.3d at 839. Chapter 39 requires the Commission to maintain at least the same level of consumer-protection in a restructured electric industry as existed on December 31, 1999. Tex. Util.Code Ann. § 39.101(f). Prior to deregulation, consumers were not protected from disconnection based on their own nonpayment of electricity bills. The specific consumer-protections adopted by the amended Disconnection Rule mirror the protections available under the deregulated system. We cannot say that the Disconnection Rule, as adopted, runs counter to chapter 39's overall intent as expressed in provisions such as section 39.101(f).

Our role in assessing a rule's validity is to carry forward statutory directives, rather than weigh the wisdom of a particular policy. *See Railroad Comm'n v. Lone Star Gas Co.,* 599 S.W.2d 659, 662 (Tex. Civ.App.-Austin 1980, writ ref'd n.r.e.). We cannot say that the Commission's adoption of a different policy in the Disconnection Rule from that contained in the initial rule violates the specific provisions of section 39.106 or the general statutory purpose of chapter 39, or that it adds an additional regulatory requirement inconsistent with the statute. Accordingly, we overrule Public Counsel's first issue.

### Reasoned Justification of the Disconnection Rule

■ As an additional challenge to the Disconnection Rule, Public Counsel asserts that its adoption violates the APA's reasoned justification requirement.

The reasoned justification requirement serves to reinforce the process of "notice and comment" rulemaking. *See* Tex. Gov't Code Ann. §§ 2001.021, .034 (West 2000). We review a reasoned justification under an arbitrary and capricious standard, with no presumption that facts exist to support the agency's order. *See Reliant Energy,* 62 S.W.3d at 841. Our inquiry serves to determine whether the Commission's explanation of the facts and policy concerns it relied upon when it adopted the rule demonstrates that the Commission considered all the factors relevant to the objectives of the Commission's delegated rulemaking authority, and engaged in reasoned decision making. *Id.* The Commission is not required to address each separate argument explicitly, but instead must generally discuss the evidence opposing the rule and provide reasons for the agency's actions. *See National Ass'n of Indep. Insurers v. Texas Dep't of Ins.,* 888 S.W.2d 198, 210 (Tex.App.-Austin 1994), *rev'd on other grounds* at 925 S.W.2d 667 (Tex.1996). The Commission acts arbitrarily if in making a decision it: (1) omits from its consideration a factor that the Legislature intended the Commission to consider; (2) includes in its consideration an irrelevant factor; or (3) reaches a completely unreasonable result after weighing only relevant factors. *Reliant Energy,* 62 S.W.3d at 841.

■ During the notice and comment process, Public Counsel filed a comment to the effect that the proposed amendments violated the purported right to continuous POLR service under chapter 39, sections 39.101(b)(4) and 39.106.[6] The Commission

---

service disconnection in situations other than those explicitly proscribed by statute.

**6.** In its adoption order, the Commission mentioned Public Counsel's concern regarding section 39.106, but not section 39.101(b)(4). Appellee Reliant asserts that the record does

not support the conclusion that Public Counsel raised an issue regarding section 39.101(b)(4) in its comments. *See* 27 Tex. Reg. 8428, 8440 (2002). Because the two provisions are substantially similar and because we believe that the adoption order,

mentioned the comment in its adoption order. *See* 27 Tex. Reg. at 8440. No element of the Commission's final order *explicitly* states that the Commission is responding to Public Counsel's comment. However, in response to an issue raised by another participating party, the Commission stated that it interpreted section 39.106 as providing a safety net to protect customers from loss of service due to aberrant market behavior. *Id.* at 8432. The Commission opined that there was no statutory requirement ensuring provision of service to non-paying customers. *Id.* In addition, the Commission offered a detailed analysis of its reasons for adopting a different policy from that adopted in the initial rule. *See id.* (explaining that original rule had been based on concerns arising from deregulation of natural gas service in Georgia, but that further analysis had shown these dangers were not present in Texas electricity market).

The order as published explains the Commission's interpretation of the relevant provisions of chapter 39 and offers a rational justification for its decision to change the consumer-protection rules. We have already held that the Commission's interpretation was consistent with the relevant statutory language. The crux of Public Counsel's argument appears to be that the particular language in which the Commission discussed its interpretation of the relevant statutory language was not referenced as a specific response to Public Counsel's comment. Public Counsel's challenge at most raises a technical defect in the adopting order. Absent a showing of prejudice to a given right or privilege, a technical defect is insufficient to invalidate an otherwise valid rule. Tex. Gov't Code Ann. § 2001.035(d) (West

2000). Public Counsel's second issue is overruled.

### Statutory Authority for the POLR Rate Rule

Chapter 39 provides that the rate charged by a POLR is to be set at a fixed, non-discountable rate approved by the Commission for each designated class of customers. Tex. Util.Code Ann. § 39.106(b). As we have already discussed, a separate section of chapter 39 provides that affiliated REPs will be required to charge the Price to Beat, which is calculated to be six percent less than the pre-deregulation rates, adjusted for fuel costs. *See id.* § 39.202(a). In the case of low-income residential consumers, chapter 39 provides that their rates will be set at ten percent less than the lower of the Price to Beat or the POLR rate. *See id.* § 39.903(h).

 Public Counsel takes the position that the Price to Beat constitutes a consumer protection, creating a ceiling on consumer prices for every residential or small commercial consumer in a given deregulated area. Public Counsel asserts that the Price to Beat applies to all REPs, affiliated and competitive. Therefore, Public Counsel argues, chapter 39 requires the Commission to continue the policies adopted in the initial rule because the POLR rate can *never* be greater than the Price to Beat. According to Public Counsel, any rule allowing the POLR rate to be set above the Price to Beat violates chapter 39.

The Commission responds that the Price to Beat does not constitute a general consumer-protection because it applies only to affiliated REPs. We agree. Chapter 39 only requires affiliated REPs to charge the Price to Beat during the transition period.

when taken as a whole, adequately accounts for Public Counsel's comment, we will address the issue as though Public Counsel had

commented on both sections 39.106 and 39.101(b)(4).

**236**

The Price to Beat does not apply to competitive REPs.[7] Any affiliated REP that serves as a POLR will do so at the Price to Beat under the POLR Rate Rule. For competitive REPs, there is no statutory requirement that the POLR rate be capped at the Price to Beat. Indeed, we note that chapter 39 expressly provides that the rate charged to low-income consumers is to be based on the *lower of* the POLR rate or the Price to Beat, suggesting that the Price to Beat may well be lower than the POLR rate. *Id.* § 39.903(h). Nothing in chapter 39 suggests that the Price to Beat necessarily has any bearing on the Commission's calculation of the rate to be charged by POLRs.

Although the amended POLR Rate Rule presents us with a change in Commission policy, our task is only to determine whether the rule as amended conflicts with the Commission's explicit statutory authority. *See Lone Star Gas*, 599 S.W.2d at 662. Chapter 39 requires that the POLR rate be set at a "fixed, non-discountable rate approved by the Commission." *See* Tex. Util.Code Ann. § 39.106(b). Public Counsel does not argue that the mechanism for setting the POLR rate fails to meet this requirement.[8] Because Public Counsel has not demonstrated that the POLR Rate Rule contradicts chapter 39's specific statutory provisions, we overrule its third issue.

## CONCLUSION

Because the Disconnection and POLR Rate Rules are consistent with chapter

39's objectives and do not contradict or impermissibly add to the Commission's statutory grant of authority, we affirm them as amended.

---

**7.** Section 39.202(a) provides that "an *affiliated retail electric provider* shall make available to residential and small commercial customers of its *affiliated* transmission and distribution utilities" electric service rates set at the Price to Beat. Tex. Util.Code Ann. § 39.202(a) (emphasis added).

**8.** Originally, Public Counsel appealed the POLR Rate Rule on the ground that rates calculated under its provisions would not be "fixed" within the meaning of section 39.106(b). Public Counsel has waived that issue, and we will not address it.