TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00633-CV






CenterPoint Energy Houston Electric, LLC, Appellant


v.


Public Utility Commission of Texas, Appellee






DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS






O P I N I O N


 In this direct appeal, we consider a challenge to the validity of a rule promulgated by
the Public Utility Commission governing electric utilities' implementation of statutorily mandated
energy-efficiency programs designed to reduce electricity consumption. See 16 Tex. Admin. Code
§ 25.181 (2011) (Pub. Util. Comm'n, Energy Efficiency Goal). (1) Appellant, CenterPoint Energy
Houston Electric, LLC ("CenterPoint"), contends that section 39.905 of the Public Utilities
Regulation Act ("PURA") requires that the Commission include a "lost-revenue adjustment
mechanism" ("LRAM") in rule 25.181 and that the Commission's failure to do so renders the rule
invalid. See Tex. Util. Code Ann. § 39.905 (West Supp. 2010). CenterPoint alternatively contends
that rule 25.181 is invalid because the Commission's failure to include an LRAM as part of
rule 25.181 resulted from the Commission's erroneous interpretation of its own authority to do so
under PURA. We will affirm.


BACKGROUND

 In 1999 the legislature enacted PURA section 39.905, which established
energy-efficiency goals designed to reduce Texas customers' energy consumption. See id. § 39.905. 
The goals consisted of specified reductions--i.e., a slowing--in the anticipated growth in demand
for electricity in the service areas of electric utilities. See id. § 39.905(a)(3). Since then, CenterPoint
has offered energy-efficiency programs designed to meet these goals. In 2007, the legislature
amended PURA section 39.905 to establish additional energy-efficiency goals. The amended statute
also directed the Commission to adopt rules to establish "an energy efficiency cost recovery factor
for ensuring timely and reasonable cost recovery for utility expenditures made to satisfy the goal of
this section." See id. § 39.905(b)(1). Thus, the purpose of the "cost-recovery factor"--essentially
a surcharge on customers' bills--was to facilitate the prompt recovery of "expenditures" made to
achieve the goals of section 39.905.

 The amended statute further provides:


 The energy efficiency cost recovery factor under Subsection (b)(1) may not result in
an over-recovery of costs but may be adjusted each year to change rates to enable
utilities to match revenues against energy efficiency costs and any incentives to
which they are granted. The factor shall be adjusted to reflect any over-collection or
under-collection of energy efficiency cost recovery revenues in previous years.


Id. § 39.905(b-1). Thus, this provision establishes an annual "true-up" procedure so that revenues
produced by the "energy efficiency cost recovery factor" ("EECRF") stay reasonably close to the
actual energy efficiency costs. In response to this legislation, in 2008 the Commission replaced its
existing energy-efficiency rule with an amended rule that added provisions establishing the newly
mandated EECRF. See 33 Tex. Reg. 3622 (2008) (former 16 Tex. Admin. Code § 25.181). As
amended in 2008, rule 25.181 stated that a utility must establish an EECRF that "complies with this
section to timely recover the reasonable costs of providing energy efficiency programs pursuant to
this section." 16 Tex. Admin. Code § 25.181(f)(6).

 In 2010, the Commission commenced a rulemaking proceeding, Project No. 37623,
to again amend rule 25.181. In that proceeding, the Commission proposed amendments to the rule
that would establish energy-efficiency goals for 2012 and 2013, add a cost cap, update the rule's
cost-effectiveness standard, and modify calculation of the rule's performance bonus for utilities
exceeding the stated energy-efficiency goals. The Commission also sought comments on whether
it should adopt an LRAM that would provide a method for utilities to recover, through the EECRF,
any revenues that could be shown to have been lost as a result of implementing the mandated energy
efficiency programs. Numerous interested entities provided comments both for and against including
an LRAM in rule 25.181. CenterPoint supported adoption of an LRAM, maintaining that, pursuant
to PURA section 39.905, the Commission "clearly has the authority" to do so and that an LRAM "is
a better solution than the filing of a costly base rate case--the utility's only other method of
addressing an inability to adjust rates." In its Order in Project No. 37623, the Commission ultimately
declined to include an LRAM provision in rule 25.181, stating that its decision was consistent with
the conclusion it had reached in an earlier proceeding that "lost revenues" are not "energy-efficiency
costs" that could be recovered through an EECRF under PURA section 39.905. (2) CenterPoint filed
this direct appeal challenging the validity of rule 25.181. See Tex. Util. Code Ann. § 39.001(f)
(West 2007).


DISCUSSION

 This proceeding is a direct challenge to the validity of a chapter 39 "competition
rule." See id. § 39.001(e). A validity challenge tests a rule on procedural and constitutional grounds. 
Office of Pub. Util. Counsel v. Public Util. Comm'n, 104 S.W.3d 225, 232 (Tex. App.--Austin 2003,
no pet.). The scope of a validity challenge also includes whether the agency had statutory authority
to promulgate the rule. City of Alvin v. Public Util. Comm'n, 143 S.W.3d 872, 878 (Tex.
App.--Austin 2004, no pet.). We presume that an agency rule is valid, and the party challenging
the rule has the burden of demonstrating its invalidity. See McCarty v. Texas Parks & Wildlife
Dep't, 919 S.W.2d 853, 854 (Tex. App.--Austin 2004, no pet.). An agency's rules must comport
with the agency's authorizing statute. See Office of Pub. Util. Counsel v. Public Util. Comm'n,
131 S.W.3d 314, 321 (Tex. App.--Austin 2004, pet. denied). To establish a rule's facial invalidity,
the challenger must show that the rule (1) contravenes specific statutory language; (2) is counter to
the statute's general objectives; or (3) imposes additional burdens, conditions, or restrictions in
excess of or inconsistent with the relevant statutory provisions. See id. (citing Office of Pub. Util.
Counsel, 104 S.W.3d at 232).

 CenterPoint contends that PURA section 39.905 requires that the Commission
include a provision for an LRAM in rule 25.181 and that its failure to do so contravenes the statute
and renders the rule invalid. CenterPoint argues that when the legislature enacted PURA
section 39.905(b-1) and directed the Commission to establish an EECRF to "enable utilities to match
revenues against energy efficiency costs and any incentives to which they are granted," it divested
the Commission of any discretion to decline to adopt an LRAM "as part of its efforts to enable
utilities to meet the legislature's energy efficiency goals." See Tex. Util. Code Ann. § 39.905(b-1). 
The Commission counters that section 39.905 authorizes only compensation for a utility's
expenditures associated with energy-efficiency programs, not for any revenues lost as a result
of implementing those programs. The dispute, therefore, turns principally on the construction
of a statute, a question of law that we review de novo. See First Am. Title Ins. Co. v. Combs,
258 S.W.3d 627, 632 (Tex. 2008).

 Our primary objective in construing statutes is to give effect to the legislature's intent. 
Galbraith Eng'g Consultants, Inc. v. Pochucha, 290 S.W.3d 863, 867 (Tex. 2009). The plain
meaning of the text is the best expression of legislative intent unless a different meaning is supplied
by legislative definition or is apparent from the context, or unless the plain meaning would lead to
absurd or nonsensical results that the legislature could not have intended. City of Rockwall
v. Hughes, 246 S.W.3d 621, 625-26 (Tex. 2008); see Tex. Gov't Code Ann. § 311.011 (West 2005)
("Words and phrases shall be read in context and construed according to the rules of grammar and
common usage."). We look to the entire act in determining the legislature's intent with respect to
a specific provision. Upjohn Co. v. Rylander, 38 S.W.3d 600, 607 (Tex. App.--Austin 2000, pet.
denied). When a statute is ambiguous, we are required to give "serious consideration" to the
construction of the statute by the administrative agency charged with its enforcement, Railroad
Comm'n v. Texas Citizens for a Safe Future & Clean Water, 336 S.W.3d 619, 624 (Tex. 2011), and
uphold the agency's interpretation if it is reasonable, First Am. Title Ins. Co., 258 S.W.3d at 632
(quoting Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993)). We do not defer
to an agency interpretation when a statute is unambiguous. See Texas Citizens, 336 S.W.3d
at 624 & n.6. We also "'do not defer to administrative interpretation in regard to questions which
do not lie within administrative expertise, or [which] deal with a nontechnical question of law.'" 
Rylander v. Fisher Controls Int'l Inc., 45 S.W.3d 291, 302 (Tex. App.--Austin 2001, no pet.)
(quoting 2B Singer, Sutherland Statutory Construction § 49.04, at 23-24 (6th ed. 2000)).

 CenterPoint contends that the plain language of PURA section 39.905 requires the
inclusion of an LRAM because the statute mandates that a utility be compensated for revenues lost
as a result of its energy-efficiency programs. CenterPoint's position depends on construing the term
"costs" as used in PURA section 39.905 to include such lost revenues. CenterPoint asserts that the
plain meaning of the term "includes the losses or sacrifices sustained as a result of an endeavor." 
Considered in context, however, we do not believe the statute permits such a broad reading of the
term "costs." See Continental Cas. Co. v. Downs, 81 S.W.3d 803, 805 (Tex. 2002) (courts
must consider statute as whole and not words or provisions in isolation). Rather, PURA
section 39.905(b)(1) directs the Commission to establish an EECRF "for ensuring timely and
reasonable cost recovery for utility expenditures made to satisfy the goal of this section." Tex. Util.
Code Ann. § 39.905(b)(1) (emphasis added). The statute thus provides that the "costs" the
legislature intended for a utility to recover through the EECRF are its "expenditures" associated with
its attempts to comply with the energy-efficiency mandate. See id. The ordinary meaning of the
term "expenditure" is: (1) the act or process of paying out; disbursement; (2) a sum paid out. 
Black's Law Dictionary 658 (9th ed. 2009). In this context, the term "expenditures" does not
contemplate lost revenues.

 In at least two other provisions of PURA, the legislature expressly distinguishes
"costs" from "revenues," indicating that its use of the term "costs" by itself does not encompass lost
revenues. For example, PURA section 55.024(b) provides that a telecommunications utility may
recover "all costs incurred and all loss of revenue" resulting from imposition of charges for
providing mandatory two-way extended area service to customers. See Tex. Util. Code Ann.
§ 55.024(b) (West 2007) (emphasis added). In PURA section 56.025(e), the legislature directed the
Commission to "implement a mechanism to replace the reasonably projected increase in costs or
decrease in revenue" caused by a governmental agency's order, rule, or policy. See id. § 56.025(e)
(West 2007) (emphasis added). These provisions further support our conclusion that the term
"costs," as used by the legislature in PURA, is not intended to include lost revenues. The
legislature's failure in PURA section 39.905 to specifically provide for recovery of "lost revenues,"
in addition to "costs," indicates that it intended for the EECRF to serve as a mechanism for a utility
to recover out-of-pocket expenditures associated with its implementation of energy-efficiency
programs, not to compensate a utility for any associated lost revenues attributable to those programs.

 CenterPoint asserts that this interpretation of the term "costs" is inconsistent with
PURA section 39.905(b-1), which provides that the EECRF may be adjusted each year to "enable
utilities to match revenues against energy efficiency costs and any incentives to which they are
granted." See id. § 39.905(b-1). CenterPoint interprets the term "revenues" to means revenues from
its overall operations and contends that the EECRF is designed to match the utility's actual revenues
with the total revenues it would have earned absent the energy-efficiency programs. We do not
believe this is a reasonable interpretation of the relevant provisions. The second sentence of
PURA section 39.905 (b-1) states: "The [cost-recovery] factor shall be adjusted to reflect any
over-collection or under-collection of energy efficiency cost recovery revenues in previous years." 
Id. (emphasis added). From the context, it is clear that the matching contemplated by the statute is
between the actual revenues the utility collects through its EECRF--i.e., energy efficiency cost
recovery revenues--and the expenditures made by the utility for the energy efficiency program--i.e.,
energy efficiency costs. The matching is not intended to address any lost revenues attributable to
a general decrease in energy consumption resulting from energy-efficiency programs. Rather, the
purpose of this provision is to ensure that a utility neither over-recovers nor under-recovers its actual
energy-efficiency program expenditures.

 CenterPoint also argues that the Commission's failure to include an LRAM in rule
25.181 renders the rule invalid because it runs counter to a legislative mandate contained in PURA
section 39.905(b)(4), which requires that the Commission ensure that "the costs associated with
[energy-efficiency] programs provided under [section 39.905] are borne by the customer classes that
receive the services under the programs." See id. § 39.905(b)(4). Again, this argument depends on
interpreting the term "costs" in this section to include lost revenues. However, there is nothing in
the statute to indicate that the term "costs" in this section should be read more expansively than in
section (b)(1). See Sheshunoff v. Sheshunoff, 172 S.W.3d 686, 690 (Tex. App.--Austin 2005, pet.
denied) (when same or similar term is used in same connection in different statutes, term will be
given same meaning in one as in other, unless there is something to indicate that different meaning
was intended). We hold that the term "costs" in both 39.905(b)(1) and (b)(4) means a utility's actual
expenditures associated with its energy-efficiency programs. These costs can be recovered from a
utility's customers through application of an EECRF that does not include an LRAM.

 We conclude that the text of the statute is clear and unambiguous and evidences the
legislature's intent that the Commission ensure that a utility recovers only its energy-efficiency
program expenditures through an EECRF. The EECRF is not intended to be used as a mechanism
to compensate a utility for any lost revenues that may result from implementation of these programs. 
CenterPoint's first appellate issue is overruled.

 In its second issue, CenterPoint contends that rule 25.181 is invalid because the
Commission's failure to include an LRAM resulted from an erroneous interpretation of its authority
under PURA section 39.905. However, an agency has only the authority expressly provided by
statute or necessarily implied to carry out the powers the legislature has given it. See Public Util.
Comm'n v. City Pub. Serv. Bd., 53 S.W.3d 310, 315-16 (Tex. 2001); Public Util. Comm'n
v. GTE-Southwest, 901 S.W.2d 401, 407 (Tex. 1995). As we have held above, PURA section 39.905
authorizes the Commission to allow utilities to recover their energy-efficiency program expenditures;
it does not authorize the Commission to adopt a rule or procedure that allows utilities to use an
EECRF to charge customers for any claimed "lost revenues" resulting from the energy-efficiency
programs they are required to implement. The Commission properly exercised its authority
under PURA section 39.905 and correctly concluded that including an LRAM in rule 25.181
would contravene the statute and exceed its statutory authority. We overrule CenterPoint's second
appellate issue.


CONCLUSION

 Because PURA section 39.905 does not permit, much less require, the Commission
to adopt a lost-revenue adjustment mechanism as part of the authorized energy efficiency
cost recovery factor, we overrule CenterPoint's two appellate issues challenging the validity of
rule 25.181, find the rule be valid, and affirm it as enacted.


 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: November 10, 2011

1. In addition to the Commission, three intervenors argue in support of the rule. They are the
Office of Public Utility Counsel, the City of Houston, and Texas Industrial Energy Consumers. 
2. The earlier proceeding had addressed--and rejected--CenterPoint's application for
approval of an EECRF that would allow it to recover $1,436,550 of revenue losses it claimed were
attributable to its 2009 energy-efficiency programs.