# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00628-CV

**Joon S. Lee, M.D., Appellant**

**v.**

**Texas Workers' Compensation Commission and Rod Bordelon, Appellees[1]**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN401080, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

Appellant Joon S. Lee, M.D., sought declaratory and injunctive relief in response to an order of the Texas Workers' Compensation Commission[2] denying him admission to the Commission's approved doctor list ("ADL"), which prevents him from treating patients under the workers' compensation system. On cross-motions for summary judgment, the district court granted the Commission's motion and denied Lee's. We will affirm the summary judgment in favor of the Commission.

---

[1] The current commissioner has been substituted for his predecessor. *See* Tex. R. App. P. 7.2(a) (automatic substitution when public officer is party in official capacity).

[2] Effective September 1, 2005, the Texas Workers' Compensation Commission was abolished and reorganized under the Texas Department of Insurance, Workers Compensation Division. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607-08. Since the order at issue was entered prior to the reorganization, all references in this opinion are to the Commission and the law existing prior to September 1, 2005.

**BACKGROUND**

To be eligible to treat injured patients and to receive payment under the workers' compensation system, a doctor must be listed on the ADL. *See* Tex. Lab. Code Ann. § 408.022(a) (West Supp. 2005).[3] Texas Labor Code section 408.023 provides the basis for admitting a doctor to the ADL and establishes the Commission's authority to adopt rules in furtherance of maintaining the list. *Id.* § 408.023 (West Supp. 2005); *see also* 28 Tex. Admin. Code § 180.20(a) (2008). Under the version of section 408.023 that was in effect until August 31, 2001, each doctor licensed in Texas was automatically admitted to the ADL "unless subsequently deleted and not reinstated." *See* Act of May 22, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1178 (amended 2001 and 2005) (current version at Tex. Lab. Code Ann. § 408.023).

In 2001, the legislature overhauled the workers' compensation system and amended section 408.023 of the labor code, ending the practice of automatic admission to the ADL. *See* Act of June 17, 2001, 77th Leg., R.S., ch. 1456, 2001 Tex. Gen. Laws 5167, 5168 (amended 2005) (current version at Tex. Lab. Code Ann. § 408.023). The 2001 amendment required the Commission to "develop a list of doctors licensed in this state who are approved to provide health care services under this subtitle." *Id.* As provided under the amended statute, doctors became eligible for inclusion on the ADL if they "register[ed] with the commission in the manner prescribed by commission rules" and they "complie[d] with the requirements adopted by the commission under this section." *Id.* Upon approving a doctor for admission to the ADL, the Commission was required

---

[3] The statute recognizes an exception to this requirement in the case of an emergency. *See* Tex. Lab. Code Ann. §§ 408.022(a), .023(f) (West Supp. 2005).

to issue the doctor a certificate of registration.  *Id.*  "In determining whether to issue a certificate of registration, the commission may consider and condition its approval on any practice restrictions applicable to the applicant that are relevant to services provided under this subtitle."  *Id.*  The statute further provided that the Commission, by rule, "shall provide a reasonable period, not to exceed 18 months after the adoption of rules under this section, for doctors to comply with the registration and training requirements of this subchapter."  *Id.*

In addition to authorizing the Commission to "develop" the ADL, the amended statute addressed how the Commission shall "maintain" the list.  *See id.* at 5169 (amended 2005) (current version at Tex. Lab. Code Ann. § 408.0231).  Section 408.0231 stated that the Commission by rule shall establish criteria for deleting or suspending a doctor from the ADL and for imposing sanctions.  *Id.*  "The criteria for deleting a doctor from the list or for recommending or imposing sanctions may include anything the commission considers relevant," including "evidence from the commission's medical records that . . . the doctor's charges, fees, diagnoses, treatments, evaluations, or impairment ratings are substantially different from those the commission finds to be fair and reasonable based on either a single determination or a pattern of practice."  *Id.* at 5169-70.

The statute also created the position of "medical advisor," a doctor employed by the Commission who would consult with the Commission regarding, among other things, "disciplinary actions imposed on a physician . . . who applies for registration or is registered with the commission on the list of approved doctors."  *Id.* at 5171 (current version at Tex. Lab. Code Ann. § 408.0511).  The medical advisor was required to establish a medical-quality review panel to make recommendations concerning "the addition or deletion of doctors from the list of approved doctors

3

under Section 408.023" and, more generally, "appropriate action regarding doctors" and other health care providers.  *Id.* (current version at Tex. Lab. Code Ann. § 413.0512).

In response to the labor code amendments, the Commission began the process of amending its rules in order to implement the new legislative scheme.  To discharge its statutory duties to develop and maintain the ADL, the Commission adopted rule 180.20.  *See* 28 Tex. Admin. Code § 180.20.  Under rule 180.20, doctors who wished to be included on the ADL would have to apply for admission by September 1, 2003.  *See id.* § 180.20(a)(1) (providing that ADL as it exists on August 31, 2003, is "null and void as of September 1, 2003," and that any doctor on ADL prior to September 1, 2003, who does not reapply or whose application is not approved will no longer be on ADL).  Until September 1, 2003, while the Commission was in the process of reviewing the applications, the ADL would automatically include "all doctors licensed in Texas on or after January 1, 1993, and doctors licensed in other jurisdictions who have been added to the list by the commission," unless the doctor had been deleted from the list by the Commission.  *Id.* § 180.20(b).

Doctors who applied for admission to the ADL by the September 1, 2003 deadline could be granted a "temporary exception" to the requirement that they must be on the ADL in order to treat workers' compensation patients, allowing those doctors the benefits of inclusion on the ADL while their applications under the new scheme were pending.  *See id.* § 180.20(e) (providing that Commission may grant temporary exception to requirement to be on ADL to ensure that employees have access to health care pending Commission action on doctor's application); *see also* Act of June 17, 2001, 77th Leg., R.S., ch. 1456, 2001 Tex. Gen. Laws 5167, 5169 (amended 2005) (current version at Tex. Lab. Code Ann. § 408.023(i)(1)) (providing that Commission may

4

grant exceptions to requirement that doctor who performs functions under workers' compensation system must be on list of approved doctors in order to ensure that employees have access to health care). The rule made clear, however, that being granted a temporary exception "does not constitute 'being on the ADL,' 'approval to be on the ADL,' or 'denial of an application to be on the ADL.'" Tex. Admin. Code § 180.20(e).

Under rule 180.20(d), the Commission determined that it could "utilize members of the Medical Quality Review Panel for evaluating ADL applications and making recommendations to the Medical Advisor to approve, approve with condition(s) or restriction(s), or deny admission to the ADL." *Id.* § 180.20(d). The rule authorized the Commission to deny an application for admission for one of three reasons: (1) failure to complete required training; (2) having relevant practice restrictions; or (3) "other activities which warrant application denial or restriction such as grounds that would require or allow the Medical Advisor to recommend deletion of a doctor from the ADL." *Id.* § 180.20(f)(1)-(3).

Lee, a board-certified diagnostic radiologist, was licensed to practice medicine in Texas in 1977. Therefore, he was automatically admitted to the ADL under the prior law and provided diagnostic radiology services to workers' compensation patients as a Commission-approved doctor. According to Lee's pleadings, thirty to forty percent of his practice was related to services that he provided to injured employees under the workers' compensation system from 1993 until the events leading to this appeal.

Lee applied for admission to the ADL under the revised statute on May 29, 2003, and was granted a temporary exception "pending further action or subsequent review by the

5

Commission." The temporary exception was effective September 3, 2003, and ordered to expire on September 1, 2005. In its letter granting Lee a temporary exception, the Commission advised Lee that his temporary-exception status "is conditioned on [his] compliance with the Statute and Commission Rules," emphasized that "[p]articipation in the Texas workers' compensation system is not a right," and informed him that the conferral of temporary-exception status "does not waive the Commissioner's right to take action at a later date based on audit or other information."

While Lee's application for admission was being processed, the Commission initiated a review of Lee's radiological evaluations. A medical-quality review panel including two board-certified diagnostic radiologists conducted a preliminary review by studying medical records in fourteen of Lee's previous cases and comparing its conclusions with Lee's. In all fourteen cases, the review panel disagreed with Lee's findings and impressions. Furthermore, the review panel determined that there was an "unjustifiable difference" between Lee's findings and impressions and the acceptable standards of care in all fourteen cases.[4] Lee was notified of these preliminary findings by letter dated December 8, 2003. In that letter, the Commission advised Lee that he could review these findings for discrepancies or errors and respond to each finding, attaching any additional documentation to support his position, and that he must submit his response by December 22, 2003.

Lee timely submitted a response, challenging the review panel's readings in each of the fourteen cases and offering additional evidence in support of his methodology. The executive council of the medical-quality review panel reviewed Lee's response but nevertheless concluded

---

[4] According to the Commission, "unjustifiable difference" in this context means findings and impressions that are outside the margin of error expected of a competent radiologist.

6

that it would recommend that the Commission deny his application to the ADL. Thereafter, Lee was notified that the medical advisor and the medical-quality review panel had determined that Lee "failed in [his] duties as a consulting doctor and a health care provider." Specifically, the review panel found that Lee had "provided health care that was found to not meet professionally recognized standards" by (1) failing to fulfill his responsibilities as a health care provider; (2) having unjustifiable differences between his findings and acceptable standards of care; and (3) having unjustifiable differences between his impressions and acceptable standards of care.

On March 5, 2004, Lee was officially notified of the Commission's intent to deny his ADL application and again provided an opportunity to respond. In reply, Lee disputed the review panel's findings, argued that he had not been given enough time or an opportunity to fully develop and present qualified expert opinion information, and requested a hearing at the State Office of Administrative Hearings before the Commission took any further action. The Commission informed Lee on March 29, 2004, that his response "did not convince the Commission to grant [Lee] admission to the ADL," offering the following explanation:

> 1. You disagree with the overall findings and conclusions of Medical Quality Review #03-QR-044.
>
> Commission's Rationale: The matters you submitted in support of this contention were reviewed. The process used to conduct the review and the time provided for response were sufficient. The findings and conclusions were correct.
>
> 2. You assert that these matters can be determined only by hearing and you request a hearing before the State Office of Administrative Hearings.
>
> Commission's Rationale: The Commission disagrees that a hearing is required on this matter. You are not entitled to a hearing under State or Federal law. Further, neither the Texas Workers' Compensation Act nor the Commission's Rules provide

7

for a hearing on this matter before the State Office of Administrative Hearings (SOAH). Your application is being denied pursuant to the procedures set forth in Rule 180.20. You were afforded due process rights in accordance with the procedures set forth in Rule 180.20(g).

After the Commission denied his application, Lee filed suit for declaratory judgment asserting that rule 180.20 exceeds the Commission's statutory grant of authority and that, because he was entitled to a hearing at SOAH, he was denied due process and due course of law under the federal and state constitutions. Lee also sought a temporary injunction to prevent the Commission from denying him admission to the ADL during the pendency of his suit, which the district court granted. The parties then filed cross-motions for summary judgment, and the district court granted the Commission's motion and denied Lee's. Lee now appeals.

## STANDARDS OF REVIEW

The standards for obtaining a traditional summary judgment are well established: the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)); *see* Tex. R. Civ. P. 166a(c).

We review the trial court's decision to grant summary judgment de novo. *Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). When the parties file

8

cross-motions for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence from both sides, determine all questions presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

On appeal, Lee argues that the Commission's promulgation of rule 180.20 exceeded its rule-making authority. An agency's construction of a statute that it is charged with enforcing is entitled to serious consideration by reviewing courts, so long as that construction is reasonable and does not contradict the plain language of the statute. *Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 151 (Tex. App.—Austin 2001, no pet.). To determine whether an agency's rule is valid, we must ascertain whether the rule is contrary to the relevant governing statutes, *State v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied), and whether the rule is in harmony with the general objectives of the statutes involved, *see Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004, pet. dism'd w.o.j.). In construing a statute, our objective is to determine and give effect to the legislature's intent by looking to the statute's plain and common meaning. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 652 (Tex. 2004); *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). If a promulgated rule has no supporting statutory authority, the rule is void. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 104 S.W.3d 225, 232 (Tex. App.—Austin 2003, no pet.); *see also* Tex. Gov't Code Ann. § 2001.174(2)(A)-(B) (West 2007) (reviewing court must reverse or remand case for further proceedings if agency's actions violate statutory provision or exceed agency's statutory authority).

9

**DISCUSSION**

In his first issue, Lee asserts that the Commission exceeded its statutory authority by promulgating rules that allowed the Commission to effectively terminate the ADL that existed prior to August 31, 2003, and to create a new ADL from which Lee was excluded. Lee argues in his second issue that the Commission lacked the authority to deny his application to the ADL on grounds not identified in the labor code. In his third issue, Lee alleges that his constitutional rights to due process and due course of law were violated when he was deleted from the ADL without an administrative hearing.

### *Challenge to rule 180.20(a)(1)*

Lee asserts that the legislature, by amending section 408.023 of the labor code, did not intend to abolish and replace the pre-existing ADL but sought only to allow the Commission to prospectively "develop" the list. The legislature's choice of the word "develop" in section 408.023, Lee argues, implies "a gradual unfolding or growth of something, such as an ADL that unfolds or grows gradually under new procedures," and not the termination of the existing ADL and the creation of an entirely new list. According to Lee, the ADL was to remain wholly unchanged, but for dropping from its rolls those doctors who failed to register with the Commission. Therefore, because rule 180.20(a)(1) declares that the pre-September 1, 2003 ADL is "null and void," Lee maintains that the rule is invalid on its face.

As an agency, the Commission is a creation of the legislature with no inherent authority and only those powers that are "expressly conferred upon it." *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001). However, when conferring a power upon

10

an agency, the legislature also "impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties," *see id.*, and the legislature is not required to include every specific detail or anticipate all unforeseen circumstances when enacting an agency's authorizing statute, *Public Util. Comm'n*, 131 S.W.3d at 321.

The legislature vested the Commission with the power and authority to promulgate rules as necessary for the implementation and enforcement of the Texas Workers' Compensation Act. Tex. Lab. Code Ann. § 402.061; *Patient Advocates*, 136 S.W.3d at 652. The rules of an agency are presumed to be valid and the challenging party has the burden of proving that the rule is invalid. *TXU Generation Co. v. Public Util. Comm'n*, 165 S.W.3d 821, 829 (Tex. App.—Austin 2005, no pet.). Therefore, in order to prevail on his challenge to the facial validity of rule 180.20, Lee must show that the rule (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 236 (Tex. 2001); *Office of Pub. Util. Counsel*, 104 S.W.3d at 232. Lee asserts that rule 180.20(a)(1), by terminating the ADL that existed until August 31, 2003, is invalid because it improperly abolished the pre-existing ADL, contrary to the legislature's intention for the ADL to continue in existence while the Commission implemented new registration criteria. We find this argument to be without merit.

Section 408.023(a) of the amended labor code authorizes the Commission to develop and adopt requirements for admission to the ADL. *See* Tex. Lab. Code Ann. § 408.023(a). Compliance with those requirements and the Commission's rules regarding registration makes a

doctor "eligible" for inclusion on the ADL. *Id.* Doctors who satisfy these eligibility requirements may then be issued a certificate of registration, a decision made by the Commission in exercise of its discretion. *See id.* § 408.023(c) (Commission may "*condition its approval* on any practice restrictions applicable to the applicant that are relevant to services provided") (emphasis added). Only a doctor who is "approved by the Commission" is given a certificate of registration, *see id.*, which a doctor is required to hold in order to perform functions under the Act, *see id.* § 408.023(f).

These provisions give the Commission the authority to determine the basis on which a doctor may be admitted to the ADL. In arguing that any doctor who satisfies section 408.023's eligibility requirements is automatically entitled to admission to the ADL, Lee disregards the legislature's investment of discretionary power in the Commission to develop requirements for admission and to review applications based on the criteria that it develops. Contrary to Lee's interpretation, meeting the eligibility requirements does not entitle a doctor to admission—indeed, no doctor is *entitled* to automatic admission under the new legislative scheme, in marked contrast to its predecessor statute. Rather, satisfying the eligibility requirements by registering with the Commission is simply a precondition that must be met before the applicant is entitled to further review. Had the legislature sought to limit the Commission's inquiry solely to whether the applicant had registered for the ADL in accordance with Commission rules, it could easily have done so. Instead, the legislature has given the Commission the responsibility to "approve" applications deemed worthy under its own rules, and with that discretion comes the concomitant power to "disapprove" applications.

12

Thus, it is clear from the statute that when the legislature ended the practice of automatic admission and directed the Commission to approve doctors to be placed on the list, it intended to create a new review process that would necessarily result in some doctors' exclusion from the list, even doctors who had previously been included on the ADL. Nowhere in the statute is it set forth that the entire membership of the previous ADL would be carried forward under the new scheme, or that the Commission's power to review and approve or disapprove an application shall be applied only to new doctors who were not previously on the ADL. As the Commission points out, the legislature could have included a "grandfather clause" to maintain the status of doctors who had previously been on the ADL if that had been its intent.[5]

Because rule 180.20(a)(1) is consistent with the relevant provisions of the labor code and does not contravene any specific statutory language, we hold that it is valid and overrule Lee's first issue.

***Challenge to rule 180.20(f)(3)***

Lee next asserts that the Commission improperly denied him admission to the ADL for a reason not authorized by the statute. According to Lee, the statute permits the Commission to deny admission to the ADL "only when the doctor is not eligible" as a result of the doctor's failure to comply with the Commission's registration requirements. Lee maintains that his application was erroneously denied on the basis that he had "provided health care that was found to not meet professionally recognized standards"—a rationale that is only appropriate for *deleting* a doctor from

_____

[5] Furthermore, the Commission notes, if Lee and others from the pre-September 1, 2003 ADL had continued to be on the list, the legislature would not have used the word "apply" because there would be no need to apply for benefits that those doctors already enjoyed.

13

the ADL, not for denying him admission. In Lee's view, the Commission's rulemaking authority with respect to approving doctors to the ADL is derived solely from section 408.023 of the labor code. Noting that the deletion of doctors from the list is dealt with in a different section of the statute, section 408.0231, Lee maintains that any factors the Commission may consider in deciding to delete a doctor from the ADL cannot enter into the Commission's decision to admit a doctor to the list. Because Lee's interpretation is contrary to the general objectives of the statute and fails to account for the interrelatedness of these provisions of the labor code, we must reject it.

Under the Commission's rule, a doctor shall be denied admission to the ADL for "activities which warrant application denial or restriction such as grounds that would require or allow the Medical Advisor to recommend deletion from the ADL." *See* 28 Tex. Admin. Code § 180.20(f)(3). The statutory basis for rule 180.20(f)(3) comes from the grant of authority to the medical advisor to make "recommendations regarding the adoption of rules to impose sanctions or delete doctors from the commission's list of approved doctors under Section 408.023." *See* Tex. Lab. Code Ann. § 413.0511(b)(4) (West Supp. 2005). The Commission under section 408.0231 may develop criteria for deleting a doctor from the ADL or imposing sanctions that include "anything the commission considers relevant." *See* Tex. Lab. Code Ann. § 408.0231(c). The medical advisor in turn must receive recommendations from the medical-quality review panel regarding "appropriate action regarding doctors," including "the addition or deletion of doctors from the list of approved doctors under Section 408.023." *See id.* § 408.0512(c)(1), (2). The recommendations from the medical-quality review panel necessarily relate to the medical quality of the doctors whose applications are submitted for review. While the statute does not define the term

14

"medical-quality review," such considerations as the reasonableness of a doctor's diagnoses and evaluations and whether he practices medicine in an acceptable manner plainly fall within the ambit of medical-quality review.

Therefore, because the legislature has required the medical-quality review panel to participate in the process of reviewing doctors' applications for admission to the ADL under section 408.023, which it does by making recommendations to the medical advisor, Lee is incorrect that the only statutory basis for denying an application is a doctor's ineligibility stemming from his failure to properly register. To suggest that compliance with the Commission's registration requirements is the sole criterion for determining whether a doctor will be admitted to the ADL would read section 408.0512(c) out of the statute. If the eligibility question was the only issue for consideration, then there would be no purpose to having the medical-quality review panel advise the Commission regarding the addition of doctors to the ADL: either a doctor is eligible because he has complied with the Commission's registration rules, or he is not. The medical-quality review panel's advisory role would be meaningless if the review process hinged upon the determination of eligibility alone. Our interpretation must harmonize and give effect to every provision of the statute, and we cannot interpret a statute in a manner that renders any part of the statute meaningless or superfluous. *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006) (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003)).

Moreover, we note that the statute allows the Commission to delete a doctor from the ADL according to criteria that include "anything the commission considers relevant." *See* Tex. Lab. Code Ann. § 408.0231(c). We find no evidence in the statute that the legislature intended

15

the Commission to have free rein in generating deletion criteria and yet be constrained in its review of whether a doctor should be admitted to the ADL by forcing it to accept every practitioner who complied with the registration requirements. On the contrary, the statute reflects an intent to give the Commission wide latitude in regulating the ADL. Section 408.023 requires only that the Commission's rules for approving doctors to the ADL be "reasonable" and "financially related to those doctors." Tex. Lab. Code Ann. § 408.023(b). The Commission is ordered under this section to establish rules "regarding training, impairment rating testing, and disclosure of financial interests as required by Section 413.041, and for monitoring of those doctors and health care providers *as provided by Sections 408.0231* and 413.0512." *Id.* (emphasis added). Here, in the plain language of section 408.023, the statute expressly links the Commission's authority to promulgate rules regarding the admission and the subsequent monitoring, discipline, and deletion of doctors, undermining Lee's position that the Commission's rule exceeds the authority granted in section 408.023 by referring to other sections of the labor code. Given that the very provision ordering the Commission to develop rules for approving doctors to the ADL references the provision governing doctors' deletion from the list, it is reasonable for the Commission's rules to reflect that interplay.

Because it does not conflict with the plain language or the overall objectives of the governing statutes, we hold that rule 180.20(f)(3) is valid. Lee's second issue is overruled.

*Due process*

In his third issue, Lee asserts that by effectively deleting him from the ADL, the Commission deprived him of a property interest without first providing him notice and a hearing,

16

violating his procedural due process rights.[6] The Commission counters that Lee was not entitled to due process because participation in the workers' compensation system is not a constitutionally protected interest. In the alternative, the Commission asserts that even if some process was due before Lee's application could be denied, the process afforded was adequate.

Due process is implicated when the state or its agents deprive a person of a protected liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). If a constitutionally protected property interest is at stake, we must then determine what process is due to sufficiently protect that interest. *Id.* In so doing, we rely on a three-factor balancing test, weighing (1) the private interest affected by the state action; (2) the risk of erroneous deprivation of a constitutionally protected interest under the procedures used and the likely benefit of any additional procedures; and (3) the government's interest, including the fiscal and administrative burdens that additional procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews*, 424 U.S. at 333; *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001).

"The procedural component of the due process clause does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

---

[6] As does Lee, we will treat together his arguments under the due process clause of the U.S. Constitution and the due course of law provision of the Texas Constitution. While the two are textually different, we generally construe the due course clause in the same way as its federal counterpart, *see Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004), and will look to case law addressing both types of claims in considering Lee's assertion, *see University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

17

"'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it.'" *Id.* (quoting *Roth*, 408 U.S. at 577). Instead, one must have a legitimate claim of entitlement. *Id.* A benefit is not a protected entitlement if government officials may grant or deny it in their discretion. *Id.* Property interests are created and their dimensions are defined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. *See Roth*, 408 U.S. at 577; *Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003); *Association of Orange County Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983).

To determine whether a particular statute creates a constitutionally protected property interest, we ask whether the statute or implementing regulations place "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Statutes or regulations limit official discretion if they contain "explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983)). Where, however, the legislature leaves final determination of which eligible individuals receive benefits to the unfettered discretion of administrators, no constitutionally protected property interest exists. *Roth*, 408 U.S. at 567.

As we have already discussed, the statute governing admission to the ADL invests the Commission with discretion to decide whether a doctor's application will be approved. Contrary to Lee's assertion, the Commission is not required to grant admission to any doctors, even those who meet the Commission's requirements for eligibility by registering with the Commission. The

provisions of the labor code authorizing the Commission to approve from the pool of eligible practitioners those doctors who will be allowed to practice under the workers' compensation system leave administration of the ADL to the discretion of the Commission. Under this scheme, Lee and others who seek admission to the ADL have no legitimate claim of entitlement to this benefit and, thus, no constitutionally protected property interest in being admitted to the ADL.[7]

Nor has Lee identified a right to due process resulting from his "effective deletion" from the ADL following the 2001 legislative amendments. Procedural due process rights do not attach where the action resulting in the alleged deprivation of property rights is legislative, rather than administrative. It is well established that the legislature, "which creates the property interest in the first place, may also take it away." *See McMurtray v. Holladay*, 11 F.3d 499, 502 (5th Cir. 1993). "The procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.'" *Atkins v. Parker*, 472 U.S. 115, 129 (1985) (quoting *Richardson v. Belcher*, 404 U.S. 78, 81 (1971)); *see also Gattis v. Gravett*, 806 F.2d 778, 781 (8th Cir. 1986) ("the legislature [that] creates a property interest may rescind it, whether the legislative body is federal or state and whether the interest is an entitlement to economic benefits, a statutory cause of action or civil service job protections"). When the legislature enacts a law that affects a general class of persons, those persons have received procedural due process by the legislative process itself. *See Bi-Metallic Inv. Co.*

---

[7] For the same reason, Lee had no protected interest in retaining his temporary-exception status from the time he was notified of the denial of his application until the exception was ordered to expire on September 1, 2005. As the Commission made clear to Lee, that status was subject to immediate revocation based on further investigation and subsequent action by the Commission during the pendency of its review of Lee's application.

*v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986).

In overhauling the workers' compensation system, the legislature implemented a new review process that terminated a doctor's entitlement to admission to the ADL. The choice to grant further administrative procedures to doctors who would no longer be qualified providers under the workers' compensation scheme was the legislature's. It chose not to do so. As this Court has already recognized, "the state has a considerable interest in regulating the quality of medical care offered to injured workers in the highly regulated workers compensation system." *Bell v. Texas Workers Comp. Comm'n*, 102 S.W.3d 299, 304 (Tex. App.—Austin 2003, no pet.). In *Bell*, we held that the doctor was not entitled to a hearing to dispute his removal from the ADL under section 408.0231(a)(3) of the labor code, which requires that a doctor be removed if his medical license is suspended or revoked. *Id.* at 304-05. We expressly reserved the threshold issue, however, of whether a doctor has a constitutionally protected interest in the right to be included on the ADL, noting only that this interest is clearly distinguishable from "the established right to due process before removal of a professional license." *Id.* at 304. We now reach that issue and hold that there is no constitutionally protected property interest in being admitted to the approved doctor list under the Texas Workers' Compensation Act.[8] Lee's third issue is overruled.

---

[8] As we emphasized in *Bell*, this is not a situation involving professional licensure or the right to practice a profession—two instances where the property interest is clearly recognized. Likewise, the federal courts that have addressed the precise issue of whether a doctor has a property interest in his continued presence on the ADL have uniformly held that he does not. *See Fogel v. Texas Dep't of Ins.*, No. 4:06-CV-00260, 2007 U.S. Dist. LEXIS 27616, at *12-13 (S.D. Tex. Apr. 11, 2007) (recognizing that professional licensure or right to practice chosen profession may be subject of property interest, but holding that presence on ADL is clearly distinguishable) (citing

20

**CONCLUSION**

Because the district court did not err in granting summary judgment in favor of the Commission, we affirm the order.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: December 17, 2008

---

*Leland v. Mississippi State Bd. of Registration*, 841 F. Supp. 192, 198 (S.D. Miss. 1993) (licensure); *Vander Zee v. Reno*, 73 F.3d 1365, 1370-71 (5th Cir. 1996) (right to practice)); *Algilani v. Texas Workers' Comp. Comm'n*, No. 3:04-CV-0848-BF, 2006 U.S. Dist. LEXIS 53285, at *10-11 (N.D. Tex. July 18, 2006) (holding same); *Weldon v. Texas Workers' Comp. Comm'n*, No. 4:04-CV-516-BE, 2005 U.S. Dist. LEXIS 31541, at *12 (N.D. Tex. Dec. 6, 2005) (holding same and noting that doctor remained free to practice medicine and treat patients outside of workers' compensation program).