Order filed March 18, 2010

 

 

 

 

 

 

                                                                        In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                           No. 11-08-00118-CV

                                                       ________

 

                  TEXAS
MUTUAL INSURANCE COMPANY, Appellant

 

                                                             V.

 

            SANDRA CRUZ,
INDIVIDUALLY AND AS NEXT FRIEND OF

          CESAR CRUZ,
NARADA CRUZ, AND MIGUEL CRUZ, Appellee

 



 

                                          On
Appeal from the 70th District Court

                                                           Ector
County, Texas

                                                Trial
Court Cause No. A-117,770

 



 

                                                                     O
R D E R

Our former
opinion and judgment dated December 17, 2009, are withdrawn, and our opinion
and judgment dated March 18, 2010, are substituted therefor. 

 

 

TERRY McCALL

March 18, 2010                                                           JUSTICE

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.








 

Opinion
filed March 18, 2010

 

 

 

 

                                                                        In The

                                                                              

  Eleventh Court of
Appeals

                                                                 ____________

 

                                                           No. 11-08-00118-CV 

                                                     __________

 

                  TEXAS MUTUAL INSURANCE COMPANY,
Appellant

 

                                                             V.

 

            SANDRA CRUZ, INDIVIDUALLY AND AS NEXT
FRIEND OF

          CESAR CRUZ, NARADA CRUZ, AND MIGUEL CRUZ,
Appellee

 



 

                                          On Appeal
from the 70th District Court

 

                                                           Ector
County, Texas

 

                                                Trial
Court Cause No. A-117,770

 



 

                                                                  O
P I N I O N

 








This case involves the calculation under
Section 408.041 of the Texas Workers=
Compensation Act of a decedent=s
average weekly wage for the thirteen weeks prior to his death.[1] 
Tex. Lab. Code Ann. ' 408.041(a) (Vernon 2006). 
The decedent, a welder, worked as an independent contractor and contracted with
the employer to obtain workers=
compensation insurance.  The contract provided that he would bill the company
at the rate of A$19
per hour for equipment rental and supplies@
and A$6.50 per hour
for labor.@  Thus, the
calculation under Section 408.001 turns on what portion of the $25.50 hourly
payment to decedent was Aremuneration@ for his services and what
portion was Areimbursement@ to him for use of
equipment and supplies.  

Based on the contract and Rule 128.1 of the
Workers= Compensation
Rules, both the hearing officer and the appeals panel determined that his
average weekly wage was $354.  The widow filed suit in district court
challenging the appeals panel=s
decision and argued that the average weekly wage should include the profit her
husband made from the use of his equipment.[2] 
Her expert calculated the decedent=s
hourly wage by estimating the decedent=s
percentage of profit over three years and multiplying the average percentage of
profit by $25.50 (the $19.00 plus $6.50).  The jury adopted the expert=s calculation, and the
trial court entered judgment that the average weekly wage was $581.  We reverse
and render judgment that the average weekly wage was $354.  We reverse the
trial court=s award of
attorney=s fees and
expenses and remand to the trial court for a determination of the appropriate
attorney=s fees and
expenses. 

Background
Facts

Jesus Cruz, a welder, worked as an
independent contractor on projects for Wagner Manufacturing and Fabrication
Company.  He was killed in a motor vehicle accident in May 2003 while returning
from a job he had performed for Wagner.  Both parties agree that his average
weekly wage should be calculated pursuant to Section 408.041(a) for the
thirteen weeks prior to his death.  Section 408.041(a).








Wagner provided oilfield welding services to
its customers, generally at distant customer rig sites.  It is not clear
whether Wagner required its welders to have workers= compensation insurance; however, it is clear
that Wagner made its workers=
compensation insurance with Texas Mutual Insurance Company available to its
welders.[3]  Sections
406.144 and 406.123 of the Workers=
Compensation Act allow independent contractors to agree to have their hiring
contractor withhold the cost of workers=
compensation insurance coverage from the contract price.  An agreement under
these sections makes the hiring contractor the employer for purposes of our
workers= compensation
laws.  On the date of Cruz=s
fatal accident, Wagner=s
welders were operating under a form of contract with Wagner that allowed them
to obtain workers=
compensation insurance through Wagner.  Cruz signed his contract with Wagner in
2000.

The contract provided that Cruz was an
independent subcontractor who would supply welding services utilizing his own
equipment and supplies.  Cruz agreed to bill Wagner at the rate of A$19 per hour for equipment
rental and supplies@
and A$6.50 per hour
for labor.@  The
contract provided that, for every 15.385 hours the welder worked at Wagner=s request, Wagner would
deduct $13.96 from his invoice to pay for the welder=s workers=
compensation coverage premium.   

Although the Workers= Compensation Act does not define the term Aaverage weekly wage,@ the Act defines Awages@ as follows:

AWages@ includes all forms of remuneration
payable for a given period to an employee for personal services.  The
term includes the market value of board, lodging, laundry, fuel, and any other
advantage that can be estimated in money that the employee receives from the
employer as part of the employee=s
remuneration (emphasis added).

 

Section 401.011(43).








The Texas Workers= Compensation Commission[4]
provided in Rule 128.1 that, in calculating the average weekly wage, an
employee=s wage shall
include: (1) all pecuniary wages (as defined by Rule 126.1) paid to the
employee and (2) all nonpecuniary wages (as defined by Rule 126.1) paid prior
to the compensable injury.  28 Tex.
Admin. Code '
128.1(b)(1), (2).  Rule 126.1 provides examples of pecuniary wages and
nonpecuniary wages.  Directly in point for this case, Rule 128.1(c) expressly
provides that an employee=s
wage, for the purpose of calculating the average weekly wage, shall not include
Apayments made by an
employer to reimburse the employee for the use of the employee=s equipment.@  28 Tex. Admin. Code ' 128.1(c)(1).

The Texas Workers= Compensation Commission=s rules have the same force
and effect as statutes and are to be construed as statutes.  Rodriguez v.
Service Lloyds Ins. Co., 997 S.W.2d 248, 254 (Tex. 1999); H.G. Sledge,
Inc. v. Prospective Inv. & Trading Co., 36 S.W.3d 597, 603 (Tex. App.CAustin 2000, pet. denied). 
Unless the rule is ambiguous, we are required to follow the rule=s clear language.  Rodriguez,
997 S.W.2d at 254.  We also defer to the Texas Workers= Compensation Commission=s interpretation of its own
rules if its interpretation is reasonable.  Sanders v. Am. Protection Ins.
Co., 260 S.W.3d 682, 684 (Tex. App.CDallas
2008, no pet.).

In affirming the hearing officer, the
appeals panel relied on Rule 128.1(c) in finding that the average weekly wage
of Cruz during the thirteen-week period was $354:

Tex. W.C. Comm=n, 28 Tex. Admin. Code ' 128.1(c)(1) (Rule
128.1(c)(1)) provides in pertinent part that AWW shall not include payments
made by the employer to reimburse the employee for the use of the employee=s equipment, for paying
helpers, for reimbursing actual expenses related to employment such as travel
related expenses, or reimbursing mileage up to the state rate for mileage.  The
language of the contract in evidence is clear, $19.00 per hour was being paid
as rental of the decedent=s
equipment and as such, pursuant to Rule 128.1(c)(1), it is not to be included
in the AWW.

 

Texas Workers=
Compensation Commission Appeals Panel No. 727, Appeal No. 040891 (May 26,
2004).

In a pretrial hearing, appellee argued that
John Allan Dinger had testified in his deposition that he was of the opinion
that Wagner could not hire a welder for $6.50 per hour if Wagner supplied the
equipment; therefore, appellee reasoned that $6.50 could not be the actual
hourly wage.  The trial court indicated that it was this testimony that
persuaded it to conclude that the hourly rate for Cruz=s labor must have been higher than $6.50. 
Thus, the trial court overruled Texas Mutual=s
objections that a jury trial was not needed and expert testimony was not
relevant because the $354 weekly wage amount was correct as a matter of law. 
Based on the jury verdict, the trial court reversed the appeals panel=s opinion and entered
judgment that the average weekly wage was $581.








The
Jury Trial

The Workers=
Compensation Act was adopted to provide prompt remuneration to employees who
sustain injuries in the course and scope of their employment.  Funes v.
Eldridge Elec. Co., 270 S.W.3d 666 (Tex. App.CSan
Antonio 2008, no pet.).  The legislative goals for our workers= compensation laws are
found in Section 402.021.  The legislature stated that injured employees are to
be provided appropriate income benefits and medical benefits in a timely and
cost-effective manner.  Section 402.021 further states that the
legislature wanted to minimize the likelihood of disputes and resolve them
promptly and fairly.  The jury trial in this case reflects the problems
encountered when statutes and a contract between the parties are ignored.

Steve A. Kulawik testified as the expert for
appellee.  Although Kulawik admitted that he did not know the legal definition
of Awage@ under the Texas Workers= Compensation Act and had
not done any workers=
compensation work, he expressed his opinion that Cruz=s hourly wage was $10.68.  Kulawik testified
that he took Cruz=s
profit shown in the Schedule C in Cruz=s
tax returns for 2001, 2002, and 2003; added back in the depreciation expense to
get a percentage of profit; averaged the percentage of profit for the three
years; and then multiplied that average percentage of profit by $25.50 to
arrive at the hourly wage of $10.68.  He stated that the profit percentages
were 31.22% for 2001, 35.6% for 2002, and 58.62% for the partial year of 2003. 
The average profit margin by his calculation was 41.81%.  Kulawik speculated
that Cruz=s profit
margin was higher in 2003 because he either carried some supplies over or they
were provided by Wagner.  However, Dinger testified that Wagner did not provide
supplies to Cruz and that part of the $19 per hour in the contract was to
reimburse Cruz for his supplies.

Dinger testified that he completed the final
wage statement for Cruz that was submitted to Texas Mutual.  The wage statement
reflected that, for the thirteen-week period prior to Cruz=s death, Cruz earned gross
wages of $4,602 for 708 hours of personal service.  The average weekly wage of
$354 can be derived by dividing the $4,602 by thirteen weeks; Dinger agreed
with this calculation at trial.  Wagner clearly excluded the $19 per hour for
equipment rental and supplies.








Dinger also testified that Cruz=s tax returns showed a loss
of $2,889 and income of $12,395  in 2000, a profit of $21,231 and income of
$74,737 in 2001, and a profit of $15,959 and income of $50,398 in 2002. 
Despite Kulawik=s
method of adding back in depreciation to obtain Cruz=s profit, Dinger explained how depreciation
works and how it is a deduction when profit is calculated. 

Kulawik testified that he was asked to
calculate in some reasonable way what Cruz=s
hourly wage was and that A[t]he
only way [he] could think to do that [was] by his profits and losses from his
business.@  Kulawik
was not furnished Cruz=s
tax return for 2000 that showed a loss.  Kulawik admitted that he had not seen
the contract between Cruz and Wagner before it was presented to him during the
trial.  He said several times that it was Dinger=s
deposition testimony that he could not hire welders for $6.50 per hour that led
him to believe that $6.50 was not the wage.  Based on Kulawik=s testimony, the jury found
that $581 was Cruz=s
average weekly wage; that answer was based on the hourly wage of $10.68.

We provided this summary of the trial to
demonstrate the complications of adopting appellee=s approach to the average weekly wage in cases
similar to this one.

Standard
of Review

The determination of Cruz=s average weekly wage is a
matter of statutory interpretation.  Statutory construction is a legal question
that is reviewed de novo to ascertain and give effect to the legislature=s intent.  HCBeck, Ltd.
v. Rice, 284 S.W.3d 349, 352 (Tex. 2009).  To discern that intent, we must
begin with the Aplain
and common meaning of the statute=s
words.@  Id. 
We also consider the objective the legislature sought to achieve through the
statute, as well as the consequences of a particular construction.  Id. 
As stated, the Texas Workers=
Compensation Commission=s
rules have the same force and effect as statutes and are to be construed as
statutes.  Rodriguez, 997 S.W.2d at 254.

Analysis

In its first three issues, Texas Mutual
argues that the trial court erred in failing to grant its motion for judgment
notwithstanding the verdict because the average weekly wage was $354 as a
matter of law, the judgment improperly included an amount paid to Cruz as
reimbursement for his equipment in violation of Rule 128.1, and the judgment
was improperly based on an estimate of Cruz=s
profit margin. 








Section 401.011(43) of the Workers= Compensation Act defines Awages@ to include Aall forms of remuneration
payable for a given period to an employee for personal services.@  Rule 128.1 specifies that
the term Awages,@ for the purpose of
calculating average weekly wage, includes Aall
pecuniary wages@ paid
to the employee.  28 Tex. Admin. Code
' 128.1(b)(1).  Rule
128.1(c)(1) expressly provides that an employee=s
wage, for the purpose of calculating the average weekly wage, shall not include
Apayments made by an
employer to reimburse the employee for the use of the employee=s equipment, for paying
helpers, [or] for reimbursing actual expenses related to employment@ (emphasis added).  28 Tex. Admin. Code ' 128.1(c)(1).

An agency rule is presumed valid, and the
challenging party has the burden of proving that the rule is invalid.  Lee
v. Tex. Workers=
Comp. Comm=n,
272 S.W.3d 806, 813-14 (Tex. App.CAustin
2008, no pet.).  We must defer to the Texas Workers= Compensation Commission=s interpretation of its own
rules, as long as its interpretation is reasonable.  See Pub. Util. Comm=n of Tex. v. Gulf States
Utils. Co., 809 S.W.2d 201, 207 (Tex. 1991); Sanders, 260 S.W.3d at
684.  The legislature left it to the Texas Workers= Compensation Commission to provide rules
relating to what payments should be included in wages.  Rule 128.1 is
consistent with the Workers=
Compensation Act=s
definition of wages as remuneration for personal services.  Rule 126.1 gives
examples of wages, and Rule 128.1 provides specific exclusions that are not to
be included as wages.  These rules are in harmony with the objectives of the
Workers= Compensation
Act.  

            The  Texas Workers=
Compensation Commission=s
interpretation of Rule 128.1 has been reasonable.  See Texas Workers= Compensation Comm=n Appeals Panel No. 1,
Appeal No. 92119, 1992 WL 358228 (May 4, 1992) (payments by employer to
reimburse worker for use of worker=s
equipment, i.e., her car, are not to be included in worker=s wage under the provisions
of Rule 128.1); Texas Workers=
Compensation Comm=n
Appeals Panel No. 12, Appeal No. 92197, 1992 WL 324277 (July 3, 1992).  It has
long been recognized that payment for reimbursement of expenses is not a form
of remuneration.  See Texas Workers=
Compensation Comm=n
Appeals Panel No. 1, Appeal No. 92119, 1992 WL 358228.   Thus, as recognized in
Section 128.1(c)(1), Areimbursement@ of expenses is not a form
of Aremuneration.@  Therefore, we conclude
that excluding payments for reimbursement as provided in Section 128.1(c)(1)
for the purpose of determining an employee=s
average weekly wage does not conflict with the definition of Awages@ in Section 401.011(43) of
the Workers=
Compensation Act. 








Appellee argues that Section 401.011(43) of
the Workers=
Compensation Act states that Awages
are >all forms of
remuneration payable for a given period=@ and Aany other advantage that
can be estimated in money.@ 
Section 401.011(43).  Based on this language, appellee asserts that the intent
of the legislature was that Aall@ and Aany@ income would be considered Awages.@  Appellee contends that
whether the $19 per hour is a Aform
of remuneration@ or an
Aadvantage that can be
estimated in money@
cannot be decided by reading the statute and was a fact question for the jury.

The purpose of the contract was to enable
Cruz to obtain workers=
compensation insurance.  The contract provided that Cruz A[could] present [his] bill
to Wagner Manufacturing showing $19.00 per hour for equipment rental and
supplies and $6.50 per hour for labor.@ 
Although it may be true that Wagner might have been required to pay a higher
hourly wage to employ welders who would use equipment supplied by Wagner, we cannot
ignore the contract of the parties that specifically stated that $6.50 would be
paid as an hourly wage and that the current workers= compensation insurance premium based on that
hourly wage was $13.96 for every 15.385 hours worked at Wagner=s request.  The contract
also stated that Cruz would Abill@ Wagner $19 per hour for
equipment rental and supplies.  The use of the term Abill@
in the contract supports the conclusion that the parties intended the $19 per
hour payment to reimburse Cruz for expenses that he had incurred.  Dinger
testified that the $19 A[was]
reimbursement for rental of truck, equipment and reimbursement of supplies.@         

Appellee had the burden to establish Cruz=s average weekly wage.  Tex.
Employer=s Ins.
Ass=n v. Bragg,
670 S.W.2d 712, 715 (Tex. App.CCorpus
Christi 1984, writ ref=d
n.r.e).  Appellee attempted to show, through Kulawik=s Aprofit@ testimony, that part of
the $19 per hour payment was not made to reimburse Cruz for his equipment and
supplies.  Appellee has not provided authority for the argument that net profit
should be used in calculating the average weekly wage.  








Rule 128.1 is not ambiguous.  The contract
is clear.  Parties should be allowed to include reasonable estimates of
reimbursements in their contracts, and the amounts estimated as reimbursements
should not be included in calculating the employee=s average weekly wage.  Cruz and Wagner agreed
that Wagner would pay Cruz $19 per hour to reimburse him for use of his
equipment and supplies.  The evidence did not show that the $19 per hour amount
in the contract was not a reasonable estimate of Cruz=s reimbursable expenses, and Kulawik=s testimony provided no
support for the jury=s
finding that Cruz=s
average weekly wage was $581.     

The legislative goal of the Workers= Compensation Act is to
provide prompt remuneration to employees who sustain injuries in the course and
scope of their employment.  Texas Mutual=s
first three issues are sustained.  We need not reach the fourth issue.  Because
we are reversing the trial court=s
determination of average weekly wage, we will also sustain the fifth issue and
reverse the trial court=s
award of attorney=s
fees and expenses.  That issue will be remanded to the trial court. 

This
Court=s Ruling

The judgment of the trial court is
reversed.  We render judgment that the average weekly wage for Cruz was $354. 
We also reverse and remand the issue of attorney=s
fees and expenses to the trial court. 

 

 

TERRY McCALL

JUSTICE

 

March 18, 2010

Panel
consists of:   Wright, C.J.,

McCall,
J., and Strange, J.

 









[1]The Texas Workers=
Compensation Act is found in Tex. Lab.
Code Ann. '' 401.001-419.007  (Vernon 2006 & Supp. 2009).





[2]The trial court denied Texas Mutual Insurance Company=s motion for summary judgment.





[3]The contract with Cruz indicated that Wagner required
all subcontractors to provide it with an insurance certificate that stated that
the subcontractor was covered by workers=
compensation insurance.  However, at trial, John Allen Dinger of Wagner
testified that the welder had an option whether to carry the workers= compensation insurance.





[4]On September 1, 2005, the Texas Workers= Compensation Commission was abolished, and its rules
and duties were transferred to the Department of Insurance, Division of Workers= Compensation.  See Act of May 29, 2005, 79th
Leg., R.S., ch. 265 '' 8.001(b), 8.004(a), 2005 Tex. Gen. Laws 469, 607-08. 
The Division of Workers= Compensation is now administered by the Commissioner
of Workers= Compensation.  Tex.
Lab. Code Ann. ' 402.00111(a) (Vernon 2006).  This suit was filed on
June 30, 2004.  For convenience, we will refer to the agency as the Texas
Workers= Compensation Commission as it was then known.