Opinion issued May 28, 2010














In The

Court of Appeals

For The

First District of Texas






NO. 01-07-01114-CV






JOE ALFRED IZEN JR., Appellant


V.


COMMISSION FOR LAWYER DISCIPLINE, Appellee






On Appeal from 129th District Court

Harris County, Texas

Trial Court Cause No. 2004-41123






DISSENTING OPINION 

 I respectfully dissent. I would hold that the interpretation and application in
this case by the State Bar of Texas Lawyer Advertisement and Solicitation Review
Committee (Advertising Review Committee or Committee) and appellee
Commission for Lawyer Discipline (Commission) of former Texas Disciplinary Rule
of Professional Conduct 7.07, governing "Filing Requirements for Public
Advertisements and Written, Recorded, Electronic, or Other Digital Solicitations," (1)
violated appellant Joe Alfred Izen Jr.'s fundamental constitutional right to due
process of law under the Fifth and Fourteenth Amendments to the United States
Constitution and article 1, section 19 of the Texas Constitution. (2) I would vacate the
judgment of the district court in favor of the Commission and render judgment that
the proceedings against Izen be dismissed. (3)


BACKGROUND Former Texas Disciplinary Rule 7.07(a) provided that, except as provided by
paragraph (d) of the Rule, a lawyer must file with the Advertising Review
Committee a copy of the written solicitation communication and a check or money
order payable to the State Bar of Texas for the fee set by the Board of Directors to
defray the expense of enforcing the rules related to such solicitations. Tex.
Disciplinary R. Prof'l Conduct 7.07, reprinted in Tex. Gov't Code Ann., tit.
2, subtit. G, app. A (Vernon 2005) (hereinafter referred to as former Rule 7.07),
current version reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon
Supp. 2009). (4)

 Former Rule 7.07(b) further required that, except as provided by paragraph
(d), the lawyer must file with the Advertising and Review Committee for review on
or before the date of its first dissemination in the public media,"(1) a copy of the
advertisement in the form in which it appears or is or will be disseminated . . . ; (2) a
production script of the advertisement . . . if the advertisement is in or will be in a
form in which the advertised message is not fully revealed by a print copy or
photograph; (3) a statement of when and where the advertisement has been, is , or
will be used; and (4) a check or money order payable to the State Bar of Texas for
the fee set by the Board of Directors. Id. at 7.07(b). (5)

 Former Rule 7.07(c) was a "safe harbor" provision. (6) It provided that a lawyer
could "secure an advance advisory opinion concerning compliance of a contemplated
solicitation communication or advertisement" by "submit[ting] to the Lawyer
Advertisement and Solicitation Review Committee, not less than thirty (30) days
prior to the date of first dissemination, the material specified in paragraph (a) or (b)
of this Rule, including the required fee." Id. at 7.07(c). It stated that "[a]n advisory
opinion of the Lawyer Advertisement and Solicitation Review Committee of
noncompliance is not binding in a disciplinary proceeding or disciplinary action but
a finding of compliance is binding in favor of the submitting lawyer if the
representations, statements, materials, facts and written assurances received in
connection therewith are true and are not misleading." Id. It warned that "[t]he
finding constitutes admissible evidence if offered by a party." Id.

 Former Rule 7.07(c) set out a detailed list of exceptions to the filing
requirements of paragraphs (a) and (b) for which filing was not required, (7) some of
them requiring subjective interpretation. These included (1) "an advertisement in
the public media that contains only part or all of the following information [set out
in subsections (i)-(xii)], provided the information is not false or misleading,"
including, for example, "(xi) any disclosure or statement required by these rules" and
"(xii) any other information specified from time to time in orders promulgated by the
Supreme Court of Texas"; (2) "an advertisement in the public media" that meets
enumerated specifications (i) and (ii); (3) "a listing or entry in a regularly published
law list"; (4) announcement cards stating changes to a firm "or a tombstone
professional card"; (5) a newsletter satisfying enumerated restrictions (i)-(iii);
(6) written solicitation communications"not motivated by or concerned with a
particular past occurrence or event or a particular series of past occurrences or
events, and also . . . not motivated by or concerned with the prospective client's
specific existing legal problem of which the lawyer is [aware]"; (7) written
solicitations whose use to secure professional employment was "not significantly
motived by a desire for, or by the possibility of obtaining, pecuniary gain"; and (8)
written solicitations "requested by the prospective client." Id. at 7.07(d).

 Former Rule 7.07(e) provided, "If requested by the Lawyer Advertisement and
Solicitation Review Committee, a lawyer shall promptly submit information to
substantiate statements or representations made or implied in any advertisement in
the public media and/or written solicitation." Id. at 7.07(e). (8)

 The comments to former Rule 7.07 explained (and, as slightly amended, still
explain) the State Bar's construction and administration of the rule, including the
filing requirements, the State Bar's procedures for applying the rule, and the
operation and extent of the "safe harbor" provision in former section 7.07(c).

 Comment 2 to former Rule 7.07 stated: 

2. Copies of non-exempt written solicitations or advertisements in
public media must be provided to the Advertising Review Committee
of the State Bar of Texas either in advance or concurrently with
dissemination, together with the fee required by the State Bar of Texas
Board of Directors. Presumably, the Advertising Review Committee
will report to the appropriate grievance committee any lawyer whom it
finds from the reviewed products has disseminated an advertisement in
the public media or written solicitation communication that violates
Rules 7.02, 7.03, 7.04, or 7.05, or, at a minimum, any lawyer whose
violation raises a substantial question as to that lawyer's honesty,
trustworthiness, or fitness as a lawyer in other respects. See Rule
8.03(a). (9)


Former Tex. Disciplinary R. Prof'l Conduct 7.07 cmt. 2.

 Comment 4 to Rule 707 provided:


4. A lawyer wishing to do so may secure an advisory opinion from
the Advertising Review Committee concerning any proposed
advertisement in the public media or any written solicitation in advance
of its first use or mailing by complying with Rule 7.07(c). This
procedure is intended as a service to those lawyers who want to resolve
any possible doubts about their proposed advertisements' or written
solicitations' compliance with these Rules before utilizing them. Its use
is purely optional. . . .


Id. at 7.07 cmt. 4. Comment 4 further stated that advance clearance was not required
and that a finding of noncompliance by the Advertising Review Committee was not
binding in a disciplinary proceeding, but a finding of compliance was binding, so
long as the lawyer's presentation to the Committee in connection with the advisory
opinion "is true and not misleading." Id.

 Comment 5 set out the State Bar's administrative procedure for evaluating
filings under former Rule 7.07, including requests for advisory opinions. It stated
that, "[u]nder its Internal Rules and Operating Procedures, the Advertising Review
Committee is to complete its evaluations no later than 25 days after the date of
receipt of a filing." Id. at 7.07 cmt. 5. It continued:

The only way that the Committee can extend that review period is to: 
(1) determine that there is reasonable doubt whether the advertisement
or written solicitation communication complies with these Rules; (2)
conclude that further examination is warranted but cannot be completed
within the 25-day period; and (3) advise the lawyer of those
determinations in writing within that 25-day period. The Committee's
Internal Rules and Operating Procedures also provide that a failure to
send such a communication to the lawyer within the 25-day period
constitutes approval of the advertisement or written solicitation
communication. Consequently, if an attorney submits an advertisement
in the public media or written solicitation communication to the
Committee for advance approval not less than 30 days prior to the date
of first dissemination as required by these Rules, the attorney will
receive an assessment of that advertisement or communication before
the date of its first intended use.


Id. at 7.07 cmt. 5.

 In January, 2003, the Advertising Review Committee sent a letter to Izen
concerning an advertisement that had appeared in a Brady, Texas Yellow Pages
telephone directory. The letter notified Izen that the Brady advertisement had not
been submitted for review as required by the Texas Disciplinary Rules of
Professional Conduct. The letter stated, in relevant part:

 It has come to the attention of the staff of the Advertising Review
Department that you or your firm has disseminated either a public
media advertisement or a written communication in violation of Part 7
of the Texas Disciplinary Rules of Professional Conduct. A copy of the
ad or writing in question is attached.

 

 Section 7.07 of the Texas Disciplinary Rules of Professional Conduct
outlines the filing requirements for advertisements and written
solicitations. Most ads and written solicitations are required by Rules
7.07(a) or (b) to be filed with the Advertising Review Committee upon
first dissemination. There are certain exemptions to the filing
requirements which are delineated in Rule 7.07(d). Ads and writings
exempt under 7.07(d) do not have to be filed but must still comply with
all other applicable provisions of Part 7. Ads and writings not exempt
under 7.07(d) must meet the filing requirements of 7.07(a) and (b) and
must also comply with all other applicable provisions of Part 7. 

 The letter advised Izen that "if an ad or writing is non-exempt, the failure to
file such ad or writing with the Committee is a violation of the advertising rules even
if the ad or writing complies with the rules in all other respects." It informed him
that the Advertising Review Committee "can report to the appropriate grievance
committee any lawyer whom it finds has disseminated an advertisement or writing
that violates any portion of Part 7. However, in an initial effort to handle violations
administratively before reporting an attorney to the grievance system, the Committee
will allow you one opportunity to submit your advertisement or written solicitation
letter for review at this time." 

 The letter "requested" that Izen "file the attached ad or writing with the
Advertising Review Department," i.e., the Brady directory listing, within twenty (20)
days of his receipt of the letter,

 in the form of an official application packet which includes: a copy of
the ad or writing, a completed application form, and a $75.00 filing fee. 
In addition, there is a late filing fee of $225.00 assessed to each
advertisement or written solicitation letter that is not timely filed as
required by Rule 7.07(a) or (b) but rather is filed in response to a
certified letter from the Advertising Review Committee. Therefore, in
order for us to accept your application packet for filing, it must be
accompanied by a $75.00 standard filing fee and a $225.00 late filing
fee for a total of $300.00. These fees should be combined into one
check.


The letter reminded Izen that "[t]he rules, filing requirements, and application form
were published in the June 1995 issue of the Texas Bar Journal," and it enclosed an
application form and the website address at which the form could be found, "[a]s an
accommodation to you." The letter then stated:

 If your completed packet is not received in this office by the twentieth
(20th) day following the date of your receipt of this letter, the
Committee will forward this matter to the appropriate grievance
committee for disciplinary action. It is absolutely essential that you
include your unique file number (referenced above) on all
correspondence pertaining to this matter. The inclusion of this number
will allow us to accurately remove your file from those pending
disciplinary action. Thank you for your cooperation.


A copy of Izen's advertisement in the Brady directory was attached to the
Committee's letter. 

 In response to the Committee's letter, Izen submitted an application for review
of the Brady directory listing, along with the $300 filing fee. During its review of
the Brady advertisement, the Committee sua sponte reviewed the two websites used
by Izen, but it did not notify Izen that it had broadened the scope of its investigation
into other advertisements and other potential rule violations. 

 During the course of its review, the Committee noted items in the Brady
advertisement and on the websites that it determined violated various State Bar Rules
concerning advertisements. However, it did not notify Izen of its determinations,
violating the provisions in its own Internal Operating Procedures (I.O.P.s) that
required it "to complete its evaluations no later than 25 days after the date of receipt
of a filing" and that further provided that "[t]he only way that the Committee can
extend that review period is to: (1) determine that there is reasonable doubt whether
the advertisement or written solicitation communication complies with these Rules;
(2) conclude that further examination is warranted but cannot be completed within
the 25-day period; and (3) advise the lawyer of those determinations in writing
within that 25-day period." Former Tex. Disciplinary R. Prof'l Conduct 7.07
cmt. 5. Instead, the Committee referred both the Brady Yellow Pages advertisement
and the websites to the Commission for the initiation of disciplinary proceedings for
violations of Rule 7.07 and all the rules it had determined that Izen's advertisements
violated. 

 The Committee's action in referring Izen's Yellow Pages advertisement and
websites to the Commission for prosecution without notice of the result of its review
of the Brady Yellow Pages ad, and without notice that it had broadened its
investigation to include Izen's websites and other potential rule violations beyond
the violation of former Rule 7.07 referenced in its January 2003 letter, also violated
the provision in its I.O.P.s that a failure to send a communication regarding the result
of the Committee's review to the lawyer within the 25-day period "constitutes
approval of the advertisement or written solicitation communication." Id. And it
belied the State Bar's representation in the Comment to Rule 7.07 that,
"[c]onsequently, if an attorney submits an advertisement in the public media or
written solicitation communication to the Committee for advance approval not less
than 30 days prior to the date of first dissemination as required by these Rules, the
attorney will receive an assessment of that advertisement or communication before
the date of its first intended use." Id.

 The Commission--like the Committee, an arm of the State Bar--filed a
petition in district court alleging that Izen had violated Texas Disciplinary Rules of
Professional Conduct 7.01(a), 7.01(e), 7.02(a)(2), 7.04(b)(3), 7.04(j), 7.07(b),
7.04(e), and 5.03(b)(1). (10) The disciplinary rules the Commission claimed Izen had
violated contained a number of restrictions on attorney advertising beyond those set
out or referenced in Rule 7.07, of whose violation he had been notified. (11) 

 The Commission claimed that Izen had engaged in false and deceptive
advertising by "constructively authorizing" the Brady directory listing and by failing
to seek approval of the ad in writing before publishing it in the Brady Yellow Pages. 
It then expanded its complaint to include the contents of the two websites owned and
disseminated by Izen, and it accused him of misleading and/or defrauding the public
by stating he was licensed to practice before the Supreme Court of the United States
and various other federal courts on the ground that the right to practice before a court
is not a "license"; by failing to place the required disclaimers "not board certified"
in a conspicuous place in the two websites; by comparing his legal services to other
attorneys in a false and misleading manner by stating he was considered by his
clients "[t]o be a highly proficient attorney with few peers in the legal profession
when it comes to a committed defense of those he represents" without proof of this
statement by "verifiable and objective data"; and by practicing law under a trade
name, specifically "Texas Legal Services," based on the Brady Yellow Pages ad and
the wording of his "divorceintexas" website. 

 Izen responded that the Committee and the Commission had denied him
administrative due process and violated their own rules and regulations by failing to
provide him an opportunity for review even though it had demanded, was paid, and
accepted and retained the late fees it solicited. He also responded that he had
changed the Brady Yellow Pages ad when he did not hear from the Committee. He
denied authorizing the ad in the form in which it was printed and claimed that, once
he discovered the errors, he disconnected the telephone line to the Brady office and
refused to accept any clients from the telephone number. Izen contended, and the
Committee and the Commission admitted, that he had the right to practice before the
United States Supreme Court and all federal district courts and courts of appeal listed
in his websites. He asserted that no "legal services" were offered to the public
through the "divorceintexas" website, that the website only promoted and sold legal
books and forms, that his competitors were publishers Nolo Press and Parsons
Technology, and that the activity advertised on the website was exempted from the
Texas definition of the practice of law. Finally, he argued that the opinions he
attributed to his clients in his advertisements were supported by his participation in
recently reported tax decisions and the opinions of his fellow practitioners.

 Following trial to a jury, the district court entered judgment specifically
reciting that the jury had found violations of Rules 7.01(a), 7.01(e), 7.02(a)(2),
7.04(b)(3), 7.04(e), 7.04(j), 7.07(b), and 5.03(b)(1) and stating, "The Court further
finds and concludes that the proper discipline of Respondent for each act of
professional misconduct as found in this case is suspension from the practice of
law." The trial court's judgment suspended Izen's license to practice law, probated
for 24 months, and imposed sanctions on him in the form of court costs and
attorney's fees incurred by appellee, the Commission for Lawyer Discipline. 

Due Process

 In his first issue, Izen contends the judgment of the trial court should be
reversed and judgment rendered in his favor "based on the State Bar Advertising
Review Committee and the Commission for Lawyer Discipline's violation of their
own rules and regulations[,] administrative due process[,] and failure to exhaust
administrative remedies." He contends that the Committee falsely promised him it
would review the Brady Yellow Pages ad if he made an application and paid the fees
and that he could resolve any complaints about the ad informally and avoid the filing
of a formal grievance. He contends he paid the fees demanded and that the
Committee retained his money but refused to review the ad in question and, instead,
made further complaints against him concerning ads other than those initially raised
and filed a grievance against him. Id. He contends that he "had a substantive liberty
and property interest protected by the Fifth Amendment to the United States
Constitution and the Due Process of Law provisions of the Texas Constitution to the
informal resolution of the Committee's Complaint(s) offered at a price by the
Committee's solicitations." Id.

 I interpret Izen's complaint to be that he has a fundamental constitutional
property interest in his law license that entitles him to due process before he may be
suspended from the practice of law. I agree that his due process rights under the
Fifth Amendment and the Texas Constitution were violated by the State Bar of Texas
Advertising Review Committee and Commission for Lawyer Discipline's application
to him of the procedures described in former Rule 7.07 of the Texas Disciplinary
Rules of Professional Conduct. I would hold, therefore, that, Rule 7.07, as applied
in this case, is unconstitutional under the Due Process Clause of both the Federal and
Texas Constitutions. 

 A. Standard of Review

 As an agency, a commission like the Commission for Lawyer Discipline "is
a creation of the legislature with no inherent authority and only those powers that are
'expressly conferred upon it.'" Lee v. Tex. Workers' Compensation Comm'n, 272
S.W.3d 806, 813 (Tex. App.--Austin 2008, no pet.) (quoting Public Util. Comm'n
v. City Pub. Serv. Bd., 53 S.W.3d 310, 316 (Tex. 2001)). Under the Texas State Bar
Act, the power to exercise administrative control over the Texas State Bar, a public
corporation and an administrative agency of the judicial department of government,
resides in the Supreme Court. Tex. Gov't Code Ann. § 81.011 (Vernon 2005). The
Act was promulgated by the Legislature "in aid of the judicial department's powers
under the constitution to regulate the practice of law," and it confers power on the
"Supreme Court of Texas, on behalf of the judicial department," to "exercise
administrative control over the state bar under this chapter." Id. at § 81.011(b), (c);
see also Preamble, Tex. Gov't Code, tit. 2, subtit. G app. A preamble (Vernon
2005) (stating that State Bar Rules are adopted in aid of supreme court's "inherent
power to regulate the practice of law"); Texans Against Censorship, Inc. v. State Bar
of Texas, 888 F. Supp. 1328, 1334 (E.D. Tex. 1995), aff'd 100 F.3d 953 (5th Cir.
1996) (stating that power to regulate practice of law resides in Supreme Court and
derives from both statutory grant of power and Supreme Court's inherent judicial
power). The power to regulate the practice of law is thus an administrative one. 
State Bar of Texas v. Gomez, 891 S.W.2d 243, 245 (Tex. 1994). And the actions of
the State Bar of Texas Advertising Review Committee and Lawyers Disciplinary
Commission are undertaken in aid of the Supreme Court's inherent judicial power
to exercise administrative authority to regulate the practice of law. See Tex. Gov't
Code Ann. § 81.011. The Committee and the Commission are therefore agents of
the state.

 Due process is implicated when the state or its agents deprives a person of a
protected liberty or property interest. Board of Regents v. Roth, 408 U.S. 564,
570-71, 92 S. Ct. 2701, 2706 (1972); Lee, 272 S.W.3d at 817. Thus, in order to
bring a due process claim, a Texas plaintiff must assert a liberty or property interest
that is protected by the Fourteenth Amendment of the United States Constitution or
article I, section 19 of the Texas Constitution. See Roth, 408 U.S. at 569, 92 S. Ct.
at 2705-06 (noting "due process appl[ies] only to the deprivation of interests
encompassed by the Fourteenth Amendment's protection of liberty and property");
see also Concerned Cmty. Involved Dev., Inc. v. City of Houston, 209 S.W.3d 666,
671 (Tex. App.--Houston [14th Dist.] 2006, pet. denied) ("The Due Process Clause
is only activated when there is some substantial liberty or property interest which is
deserving of procedural protections."). "To have a property interest in a benefit, a
person clearly must have more than an abstract need or desire for it. He must have
more than a unilateral expectation of it. He must, instead, have a legitimate claim
of entitlement to it." Nat'l Collegiate Athletic Ass'n v. Yeo, 171 S.W.3d 863, 870
n.19 (Tex. 2005) (quoting Roth, 408 U.S. at 577, 92 S. Ct. at 2709). 

 An attorney has a constitutionally protected interest in his license to practice
law. See Cleveland v. United States, 531 U.S. 12, 15, 26 n.4, 121 S. Ct. 365, 368,
374 n.4 (2000) (finding property interest requiring due process in video poker
license and stating that "[t]he question whether a state-law right constitutes
'property' or 'rights to property' is a matter of federal law," and"[i]n come contexts,
. . . individuals have constitutionally protected property interests in state-issued
licenses essential to pursuing an occupation or likelihood"); Barry v. Barchi, 443
U.S. 55, 99 S. Ct. 2642 (1979) (harness racing trainer license); Gershenfeld v.
Justices of the Supreme Court of Pennsylvania, 641 F. Supp. 1419, 1423 (E.D. Pa.
1986) (law license); Statewide Grievance Comm. v. Johnson, 946 A.2d 1256, 1261,
108 Conn. App. 74, 81 (Conn. App. Ct. 2008) (holding that license to practice law
is property interest that cannot be suspended without due process, "[i]n part because
such actions are adversary proceedings of a quasi-criminal nature"). 

 When a constitutionally protected property interest is at stake, the courts must
determine what process is due to protect that interest. Roth, 408 U.S. at 571, 92 S.
Ct. at 2706; Lee, 272 S.W.3d at 817. In so doing, they rely upon a three-pronged
test, "weighing (1) the private interest affected by the state action; (2) the risk of
erroneous deprivation of a constitutionally protected interest under the procedures
used and the likely benefit of any additional procedures; and (3) the government's
interest, including the fiscal and administrative burdens that additional procedural
requirements would entail." Lee, 272 S.W.3d at 817; see Mathews v. Eldridge, 424
U.S. 319, 335, 96 S. Ct. 893, 903 (1976); Univ. of Tex. Med. Sch. v. Than, 901
S.W.2d 926, 930 (Tex. 1995). Due process requires, at a minimum, notice and an
opportunity to be heard at a meaningful time in a meaningful manner. Mathews, 424
U.S. at 333, 96 S. Ct. at 902; Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001). A
license to practice law constitutes a type of property whose divestment cannot be
affected without affording substantial due process, including the opportunity to be
heard and to confront and cross-examine adverse witnesses. In re Ming, 469 F.2d
1352, 1353 (7th Cir. 1972) (holding that failure to afford hearing prior to issuing
order of suspension based on misdemeanor conviction violated due process).

 In In re Ruffalo, the United States Supreme Court held that where an attorney
in state disbarment proceedings had no notice that his employment of a certain
person would be considered a disbarment offense until after both he and that person
had testified at length on all material facts pertaining to that phase of his case, the
absence of fair notice as to the reach of the grievance procedure and the precise
nature of the charges against him deprived the attorney of procedural due process,
even though he was thereafter given several months to respond to the charge. 390
U.S. 544, 550-52, 88 S. Ct. 1222, 1226 (1968). The court stated that disbarment,
which is designed to protect the public, is a punishment or penalty imposed on the
attorney and, therefore, he is entitled to procedural due process, including notice of
the charge. Id.at 550, 88 S. Ct. at 1226. Thus, when proceedings for disbarment are
not based on matters occurring in open court in the presence of judges, notice should
be given to the attorney of the charges made and an opportunity afforded him to
explain and defend against them. Id. It held that an attorney is entitled to procedural
due process in disbarment proceedings, including fair notice of the charge. See id.

 The Supreme Court specifically observed in Ruffalo that the petitioner had had
no notice that his employment of the employee would be considered a disbarment
offense until after both he and the employee had testified at length on all the material
facts pertaining to that phase of his case. Id. at 550-51, 88 S. Ct. at 1226. The Court
commented, quoting the dissenting judge in the court below, "Such procedural
violation of due process would never pass muster in any normal civil or criminal
litigation." Id. at 551, 88 S. Ct. at 1226. It stated:

These are adversary proceedings of a quasi-criminal nature. The charge
must be known before the proceedings commence. They become a trap
when, after they are underway, the charges are amended on the basis of
testimony of the accused. He can then be given no opportunity to
expunge the earlier statements and start afresh.


Id. (internal citations omitted). 

 The Court specifically noted that the state and local bar associations that filed
amici briefs had argued that there was no due process violation because the state
disciplinary board had given Ruffalo several months to respond to the charge. Id.
at 551 n.4, 88 S. Ct. at 1226 n.4. The Court disagreed, stating,

 This argument overlooks the fact that serious prejudice to petitioner may well
have occurred because of the content of the original 12 specifications of
misconduct. He may well have been lulled 'into a false sense of security'
(Bouie v. City of Columbia, 378 U.S. 347, 352, 84 S. Ct. 1697, 1702, 12 L.
Ed. 2d 894) that he could rebut charges Nos. 4 and 5 by proof that [the
employee] was his investigator rather than a solicitor of clients. In that
posture he had 'no reason even to suspect' (ibid.) that in doing so he would
be, by his own testimony, irrevocably assuring his disbarment under charges
not yet made.


Id. The Court held, "This absence of fair notice as to the reach of the grievance
procedure and the precise nature of the charges deprived petitioner of procedural due
process." Id. at 552, 88 S. Ct. at 1226.

 B. Analysis

 Izen asserts the letter from the Committee creates an entitlement to "an initial
effort to handle violations administratively before reporting an attorney to the
grievance system." He contends the letter is a mutually explicit understanding to
reach "informal resolution of any [c]omplaint concerning Izen's ads, without a filing
of a formal grievance" or "resolve any potential grievance informally." Specifically,
he states, "The Committee failed to follow the very procedures which it outlined in
its letters [sic]: (1) pay a fee, (2) apply for a review of the ad, and (3) resolve any
potential grievance informally." I agree.

 In my view, this case is virtually on all fours with Ruffalo. The Committee's
letter appeared to extend to Izen the protections of the safe harbor in former Rule
7.07(c), but, in fact, it did not. Instead, as with the notice to Ruffalo, which cited
only the "original 12 specifications of misconduct," the Committee's letters cited
only to Izen's violation of former Rule 7.07, consisting of his publishing the Brady
Yellow Pages ad without filing it with the Committee. Furthermore, "in an initial
effort to handle violations administratively before reporting an attorney to the
grievance system," the letter specifically offered him "one opportunity to submit
your advertisement or written solicitation letter for review at this time," as provided
in the safe harbor rule, former Rule 7.07(c), upon his paying the filing fee and late
fee, which he did. Thus, like Ruffalo, Izen "may well have been lulled 'into a false
sense of security'" that he could rebut the Committee's charges against him in
accordance with the administrative procedures of the Committee as set out in
Comments 4 and 5 to the Rule in the Texas Disciplinary Rules of Professional
Conduct. Ruffalo, 390 U.S. at 551, 88 S. Ct. at 1226 (quoting Bouie, 378 U.S. at
352, 84 S. Ct. at 1702); see former Tex. Disciplinary R. Prof'l Conduct 7.07
cmts. 4-5. 

 After receiving the January 2003 letter from the Advertising Review
Committee and having apprised himself of the provisions of former Rule 7.07(c),
Izen, like Ruffalo, "had 'no reason even to suspect' . . . that in [responding to the
Committee's offer] he would be, by his own testimony, irrevocably assuring his
[suspension] under charges not yet made." Ruffalo, 389 U.S. at 551 n.4, 88 S. Ct. at
1226 n.4. Nor had Izen any reason to suspect that, by coming within the sights of
the Advertising Review Committee, his Brady Yellow Pages ad had set in motion a
wide-ranging sua sponte State Bar investigation into all of his attorney advertising
under all of its attorney advertising disciplinary rules, an investigation which, by the
State Bar Advertising Review Committee's disregard of its own I.O.P.s, irrevocably
assured the filing of disciplinary proceedings against him by the State Bar's
Disciplinary Commission on charges of which he had been given no notice and
which he had no opportunity to cure, either by attempting to comply--e.g., by
disconnecting the Brady office's telephone and refusing business from the Yellow
Pages ad (which he had done as a cautionary measure on failing to hear from the
Committee)--or by filing a request for advisory review of all of his advertising,
including his websites (one of which only sold legal books and forms) or filing a suit
for a declaratory judgment on the State Bar's (unrevealed) determinations.

 I would hold that by offering Izen the protections of former Rule 7.07(c) in
exchange for the filing fee and late fees solicited and paid, and then by failing to
follow its own I.O.P.s and extend to him the protections expressly set out in former
Rule 7.07(c) and the State Bar's Comments 4 and 5 to Rule 7.07, including the
opportunity to cure, and by instead broadening its sua sponte investigation to all of
Izen's advertising under all of the advertising rules on its own initiative and without
notice to him and then filing and prosecuting disciplinary proceedings seeking the
suspension of his license to practice law, the State Bar of Texas, through its
Advertising Review Committee and Commission for Lawyer Discipline, plainly
violated not only the Committee's own administrative procedures but also Izen's
constitutional due process rights, rendering the Committee's and the Commission's
interpretation and application of former Rule 7.07 to Izen unconstitutional under the
Due Process Clause of the Fourteenth Amendment to the United States Constitution
and article 1, section 19 of the Texas Constitution. See Ruffalo, 390 U.S. at 550-52,
88 S. Ct. at 1226 (holding that absence of fair notice as to reach of grievance
procedure and precise nature of charges against him in state disbarment proceeding
deprived attorney of procedural due process).

 Indeed, the State Bar's interpretation and application of former Rule 7.07 to
Izen calls into question not only the constitutionality of that rule under the
Fourteenth Amendment and article 1, section 19, but also under the First
Amendment. Upon the adoption of the Texas Supreme Court's Order of November
15, 1994, amending all of Part VII of the Disciplinary Rules of Professional
Conduct, the amended Rules, including former Rules 7.01, 7.02, 7.04, and 7.07 at
issue in this suit, were challenged in Texans Against Censorship, Inc. v. State Bar
of Texas. 888 F. Supp. 1328 (E.D. Tex. 1995). Each was held not to infringe the
First Amendment's protection of commercial speech. Id. In addition, however,
former Rule 7.07 was specifically challenged in that suit as violating the
constitutional prohibition against prior restraint under the First Amendment. See id.
at 1365-68. 

 The federal district court in Texans Against Censorship interpreted former
Rule 7.07(c) as providing a safe harbor against the unconstitutional application of
the advertising rules to attorneys--an interpretation directly opposite to that of the
Advertising Review Committee and the Commission for Lawyer Discipline in this
case--and it rested its conclusion that former Rule 7.07 did not violate the
prohibition against prior restraint of free speech under the First Amendment solely
on its interpretation of former section 7.07(c) as providing a safe harbor against
unconstitutional prior restraint of speech by the State Bar. See id. at 1365-68. The
State Bar's contrary interpretation of former Rule 7.07(c) in this case as not
providing a safe harbor against State Bar disciplinary actions to suspend an
attorney's license, and therefore as not requiring notice and an opportunity to cure
before the filing of disciplinary action by the State Bar, thus not only calls into
question the constitutionality of Rule 7.07 under the Fourteenth Amendment and
article 1, section 19 of the Texas Constitution, but also calls into question the
rationale upon which the federal district court held in Texans Against Censorship
that former Rule 7.07 did not violate the First Amendment.

 In reaching its conclusion that former Rule 7.07 did not place an
unconstitutional prior restraint on commercial speech, the federal district court in
Texans Against Censorship distinguished Bantam Books, Inc. v. Sullivan, 372 U.S.
58, 83 S. Ct. 631 (1963), as inapplicable, given the probable future interpretation of
Rule 7.07(c) by the Texas State Bar Advertising Review Committee. In Bantam
Books, the United States Supreme Court had held that the practices of a state
commission charged with educating the public about obscene and indecent
publications amounted to an unconstitutional system of informal censorship, and
therefore a prohibited prior restraint on the constitutional right to freedom of
commercial speech because, even though the commission had no power to prohibit
book sellers or publishers from distributing books it found to be objectionable, it
notified them that it had found certain publications objectionable, that a list of those
publications had been provided to local law enforcement officials, and that
cooperation from the distributor or publisher would obviate the need for prosecution,
causing the publishers and distributors to remove the publications from circulation. 
Texans Against Censorship, 888 F. Supp. at 1367 (citing Bantam Books, 372 U.S.
at 59-63, 83 S. Ct. at 633-35). 

 The district court in Texans Against Censorship pointed out that, in Bantam
Books, the Supreme Court had stated, "Where such consultation is genuinely
undertaken with the purpose of aiding the distributor to comply with such laws and
avoid prosecution under them, it need not retard the full enjoyment of First
Amendment Freedoms." Id. (citing Bantam Books, 372 U.S. at 72, 83 S. Ct. at 640). 
The district court then stated, with respect to its own review of former Rule 7.07(c)
of the Texas Disciplinary Rules of Professional Conduct:

No evidence has been presented here to show even a likelihood that the
Review Committee will include coercive or intimidating statements in
its advance advisory opinions. On the contrary, amended rule 7.07(c)
appears to contemplate that the Review Committee will simply
determine whether an advertisement or solicitation communication
submitted for an advance advisory opinion complies with the Texas
rules, and state the reasons for such finding. It appears, then, that the
advance opinion process is "genuinely undertaken with the purpose of
aiding [lawyers] to comply" with the Texas rules, id. at 72, 83 S. Ct. at
640, and is thus not a prior restraint on speech.


Texans Against Censorship, 888 F.Supp. at 1368 (emphasis added).

 Unhappily, the federal court's benign prognostication of the way in which the
State Bar of Texas's Advertising Review Committee and Commission for Lawyer
Discipline would interpret and apply the provision in section 7.07(c) that the federal
court interpreted as a safe harbor has not been borne out by events. True, the
Committee and the Commission have not interpreted Rule 7.07 in a way that acts as
a prior restraint on free speech. They have, instead, in this case, gone far beyond
interpreting Rule 7.07 as permitting the Committee to notify an attorney in advance
of publication that it finds an advertisement to be false and misleading and thus to
restrain its publication. Rather, having solicited a fee for its review of the Brady
Yellow Pages advertisement with the lure of a safe harbor, and without notice to Izen
that it had determined that the publication violated the Disciplinary Rules of
Professional Conduct in a number of ways, the Committee initiated sua sponte an
investigation of all of Izen's advertising, seeking violations under all the advertising
rules; it determined that a number of rules had been violated; and it decided not to
follow its stated internal operating proceedures and not to permit him an opportunity
to cure any of the violations it had discovered. Instead, the Advertising Review
Committee notified the Commission of its findings so that disciplinary proceedings
could be initiated against him on all violations determined by the Committee to have
occurred. These actions by the Committee and the initiation of disciplinary
proceedings by the Committee denied Izen both fair notice as to the reach of the
grievance procedure and the precise nature of the charges against him, and an
opportunity to be heard and to cure any perceived violation or to question any such
determination in declaratory judgment proceedings in advance of the State Bar's
initiation of proceedings seeking the suspension of his license to practice law. 

 In its brief on appeal, the State expresses its understanding of Rule 7.07(c) as
follows:

 In his first issue, Izen claims that his due process rights have
been violated because he possessed a protected liberty and property
interest in the informal resolution of his violations of the disciplinary
rules. Izen bases his claim on a letter he received from the State Bar's
Advertising Review Committee (ARC), a letter which he unreasonably
interpreted as offering him the opportunity to avoid disciplinary action
for multiple advertising violations by paying a $225.00 fee.


 Izen's first issue is without merit. Izen's interest in avoiding
discipline did not constitute a legitimate claim of entitlement protected
by the due process clause. At most, Izen possessed an expectancy that
no formal action would be taken, and his expectancy resulted from his
own misunderstanding of the disciplinary rules and the letter he
received from ARC. His unreasonable expectation that, simply by
paying a $225.00 fee, he could avoid disciplinary action no matter how
egregious his violations did not constitute an interest protected by the
constitution or other law.


 The understanding of the purpose of former Rule 7.07(c) evinced by the
Committee and the Commission in this case is the exact opposite of the federal
district court's understanding of the purpose of former Rule 7.07(c) as providing a
safe harbor from prosecution and therefore as preventing the unconstitutionality of
the Texas State Bar lawyer advertising rules, namely that Rule 7.07(c) offered
"consultation . . . genuinely undertaken with the purpose of aiding [lawyers] to
comply with such laws and avoid prosecution under them." Texans Against
Censorship, 888 F. Supp. at 1367 (quoting Bantam Books, 372 U.S. at 72, 83 S. Ct.
at 640). It is also the exact opposite of the interpretation of the type of restriction of
free speech that "need not retard the full enjoyment of First Amendment Freedoms." 
Id. It is the exact opposite of the way the United States Supreme Court interpreted
the due process fair notice requirements of the Fourteenth Amendment in Ruffalo. 
And it is the exact opposite of the way I too would interpret former Rule 7.07(c) and
its protections.

 It is inconceivable to me that Texas Disciplinary Rule of Professional Conduct
7.07, as interpreted and applied in this case by the State Bar of Texas Advertising
Review Committee and appellee the Commission for Lawyer Discipline could pass
constitutional muster under either the Due Process Clause of the Fourteenth
Amendment to the United States Constitution or article 1, section 19 of the Texas
Constitution, and I would hold that it does not.




Conclusion

 I would hold that former Texas Disciplinary Rule of Professional Conduct
7.07 was unconstitutionally applied to Izen in deprivation of his right to due process
of law under the United States and Texas Constitutions and that this constitutional
violation tainted all of the charges against him in this case. I would, therefore,
vacate the judgment of the trial court and render judgment that the proceedings
against Izen be dismissed.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.

Justice Keyes dissenting.

1. Tex. Disciplinary R. Prof'l Conduct 7.07, reprinted in Tex. Gov't Code Ann.,
tit. 2, subtit. G, app. A (Vernon 2005) (hereinafter referred to as former Rule 7.07),
current version reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon
Supp. 2009).
2. Article 1, section 19 provides:


No citizen of this State shall be deprived of life, liberty, property,
privileges or immunities, or in any manner disfranchised, except y the
due course of the law of the land.


 Tex. Const. art. 1, § 19.
3. This case arose in January 2003. Therefore, the Disciplinary Rules of Professional
Conduct at issue in this appeal are those in effect in 2003. The disciplinary rules were
amended effective June 1, 2005, but Izen's constitutional complaint is not mooted by
the amendments to the disciplinary rules. The rules set out and addressed here are the
former rules, with citations to parallel passages in the current rules.
4. Former Rule 7.07 provided, in relevant part:


 (a) Except as provided in paragraph (d) of this Rule, a lawyer shall file
with the Lawyer Advertisement and Solicitation Review Committee of
the State Bar of Texas, either before or concurrently with the mailing
or sending of a written solicitation communication:


 (1) a copy of the written solicitation communication being sent
or to be sent to one or more prospective clients for the purpose
of obtaining professional employment . . .;


 (2) a check or money order payable to the State Bar of Texas
for the fee set by the Board of Directors. Such fee shall be for
the sole purpose of defraying the expense of enforcing the rules
related to such solicitations.


 (b) Except as provided in paragraph (d) of this Rule, a lawyer shall file
with the Lawyer Advertisement and Solicitation Review Committee of
the State Bar of Texas, either before or concurrently with the first
dissemination of an advertisement in the public media, a copy of that
advertisement. The filing shall include:


 (1) a copy of the advertisement in the form in which it appears
or is or will be disseminated, such as a videotape, an audiotape,
a print copy, or a photograph of outdoor advertising;


 (2) a production script of the advertisement . . . if the
advertisement is in or will be in a form in which the advertised
message is not fully revealed by a print copy or photograph;


 (3) a statement of when and where the advertisement has been,
is , or will be used; and


 (4) a check or money order payable to the State Bar of Texas
for the fee set by the Board of Directors. Such fee shall be for
the sole purpose of defraying the expense of enforcing the rules
related to such advertisements.


 (c) A lawyer who desires to secure an advance advisory opinion
concerning compliance of a contemplated solicitation communication
or advertisement may submit to the Lawyer Advertisement and
Solicitation Review Committee, not less than thirty (30) days prior to
the date of first dissemination, the material specified in paragraph (a)
or (b) of this Rule, including the required fee. . . . An advisory opinion
of the Lawyer Advertisement and Solicitation Review Committee of
noncompliance is not binding in a disciplinary proceeding or
disciplinary action but a finding of compliance is binding in favor of
the submitting lawyer if the representations, statements, materials, facts
and written assurances received in connection therewith are true and are
not misleading. The finding constitutes admissible evidence if offered
by a party.


 Former Tex. Disciplinary R. Prof'l Conduct 7.07. 


 Section (d) of the current Rule 7.07 states, with respect to the effect of the
findings of the Advertising Review Committee in response to a request for an
advisory opinion:


 If a lawyer submits an advertisement or solicitation communication for
pre-approval, a finding of noncompliance by the Advertising Review
Committee is not binding in a disciplinary proceeding or disciplinary
action but a finding of compliance is binding in favor of the submitting
lawyer as to all materials actually submitted for pre-approval if the
representations, statements, materials, facts and written assurances
received in connection therewith are true and are not misleading. The
finding of compliance constitutes admissible evidence if offered by a
party.


 Tex. Disciplinary R. Prof'l Conduct 7.07(c), reprinted in Tex. Gov't Code
Ann., tit. 2, subtit. G, app. A (Vernon Supp. 2009).
5. Current Rule 7.07 requires the submission of all lawyer advertising in whatever form. 
 See Tex. Disciplinary R. Prof'l Conduct 7.07(a).
6. Current Rule 7.07 adds a new section (c) that is specific to websites and contains
essentially the same strictures as current section (b), which encompasses all other
forms of advertisement. Advisory opinions, formerly addressed in section 7.07(c), are
now addressed in section 7.07(d). See Tex. Disciplinary R. Prof'l Conduct 7.07. 
Former section (d), with amendments, is now section (e). Id. 
7. Current rule 7.07(d)(1) is identical to former section 7.07(c)(1), except for the
addition of a proviso that states,"provided those materials comply with Rule 7.02(a)
through (c) and, where applicable, Rule 7.04(a) through (c)." See Tex. Disciplinary
R. Prof'l Conduct 7.07(d)(1). 
8. Former section (e) is now section (f), and is the same except for additional language that
restricts the application of the section to representations "by which the lawyer seeks paid
professional employment." Tex. Disciplinary R. Prof'l Conduct 7.07(f).
9. The current comment is virtually identical except for clarifying that it applies to websites
as well as written solicitations. Both current and former Rule 8.03(a), referenced in the
comment, require a lawyer who knows "that another lawyer has committed a violation of
applicable rules of professional conduct that raises a substantial question as to that lawyer's
honesty, trustworthiness or fitness as a lawyer in other respects" to "inform the appropriate
disciplinary authority." Tex. Disciplinary R. Prof'l Conduct 8.03(a), reprinted in Tex.
Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon 2005).
10. See Tex. Disciplinary R. Prof'l Conduct 5.03(b)(1), 7.01(a), 7.01(e), 7.02(a)(2),
7.04(b)(3), 7.04(j), 7.07(b), and 7.04(e), reprinted in Tex. Gov't code Ann., tit. 2,
subtit. G, app. A (Vernon 2005). The Rules cited are those in effect at the time of
Izen's violations. The Rules have since been amended. For clarity and consistency,
we refer to the former Rules as cited by the parties and recited in the judgment.
11. Former Rule 7.01(a) prohibited a lawyer in private practice from practicing "under a
trade name, a name that is misleading as to the identity of the lawyer or lawyers
practicing under such name, or a firm name containing names other than those of one
or more of the lawyers in the firm," with certain enumerated exceptions. Former Tex.
Disciplinary R. Prof'l Conduct 7.01(a). Former Rule 7.01(e) provided that "[a]
lawyer shall not advertise in the public media or seek professional employment by
written communication under a trade or fictitious name," again with enumerated
exceptions. Id. at 7.01(e). Current Rule 7.01 is virtually identical. See Tex.
Disciplinary R. Prof'l Conduct 7.01.


 Former Rule 7.02(a) provided that "[a] lawyer shall not make a false or
misleading communication about the qualifications or the services of any lawyer or
firm." Former Tex. Disciplinary R. Prof'l Conduct 7.02(a). Subsection (a)(2)
defined a communication as "false or misleading if it . . . is likely to create an
unjustified expectation about results the lawyer can achieve, or states or implies that
the lawyer can achieve results by means that violate these rules or other law." Id. at
7.02(a)(2). The current rule elaborates upon this definition, stating that a
communication is false or misleading if it "contains any reference in a public media
advertisement to past successes or results obtained unless" four enumerated criteria
are met, including (i) that the lawyer served as lead counsel or had primary
responsibility for the settlement or verdict, (ii) the amount involved was actually
received by the client, (iii) "the reference is accompanied by adequate information
regarding the nature of the case or matter, and the damages or injuries sustained by
the client," and (iv) "if the gross amount received is stated, the attorney's fees and
litigation expenses withheld from the amount are stated as well." Tex. Disciplinary
R. Prof'l Conduct 7.02(a)(2).


 Former Rule 7.04(b)(3) required a lawyer advertising in the public media to
state with respect to each area advertised in which he was not board certified that he
was not or that no designation had been made by the Texas Board of Legal
Specialization in that area. Former Tex. Disciplinary R. Prof'l Conduct
7.04(b)(3). Again the current rule is more complex in requiring that an attorney


 in the case of infomercial or comparable presentation, state that the
presentation is an advertisement;

 (i) both verbally and in writing at its outset, after any
commercial interruption, and at its conclusion; and 

 (ii) in writing during any portion of the presentation that
explains how to contact a lawyer or law firm.


Tex. Disciplinary R. Prof'l Conduct 7.04(b)(3). 


 Former Rule 7.04(e) required, like the current rule, that "[a]ll advertisements
in the public media for a lawyer or firm must be reviewed and approved in writing by
the lawyer or a lawyer in the firm." Former Tex. Disciplinary R. Prof'l Conduct
7.04(e).


 Former Rule 7.04(j) required, like the current rule, that "[a] lawyer or firm who
advertises in the public media must disclose the geographic location, by city or town,
of the lawyer's or firm's principal office" and " shall not advertise the existence of
any office other than the principal office" unless the office is staffed by a lawyer at
least three days a week or the advertisement states the days and times a lawyer will
be present at the office or "that meetings with lawyers will be by appointment only." 
Id. at 7.04(j).


 Former Rule 5.03(b)(1) provides that "a lawyer shall be subject to discipline
for the conduct of [a nonlawyer employed or retained by or associated with a lawyer]
that would be a violation of these rules if engaged in by a lawyer if . . . the lawyer
orders, encourages, or permits the conduct involved." Id. at 5.03.